424 F.2d 728
 L. E. BLAKELY and Richard R. Campbell, Jr., Plaintiffs-Appellees,
v.
The AMERICAN EMPLOYERS' INSURANCE COMPANY et al.,
Defendants-Appellants, v. Neil L. VAUGHN, d/b/a
Vaughn Agency, Third-Party Defendant, v.
ECHLIN-IRVIN-CROWELL &
COMPANY,
Fourth-
Party Defendant.
 No. 27537.
 United States Court of Appeals, Fifth Circuit.
 April 9, 1970, Rehearing Denied and Rehearing En Banc Denied
July 6, 1970.
 
 James A. Williams, Bailey, Williams, Weber & Allums, Dallas, Tex., for defendants-appellants.
 Otto B. Mullinax, Mullinax, Wells, Mauzy & Collins, Dallas, Tex., for L. E. Blakely.
 Thomas H. Hight, Dallas, Tex., Maloney, Black & Hearne, Thomas Black, Austin, Tex., for Richard R. Campbell III.
 Before THORNBERRY, GODBOLD and MORGAN, Circuit Judges.
 LEWIS R. MORGAN, Circuit Judge.
 
 
 1
 This appeal arises from actions (later consolidated) brought by Richard R. Campbell, Jr., and L. E. Blakely against the American Employers' Insurance Company.
 
 
 2
 In October, 1965, American issued a standard automobile liability policy to Richard R. Campbell, Jr., in the name of Richard R. Campbell, III, covering one Chevrolet automobile. On April 13, 1966, Campbell, III, who resided in Lubbock, Texas, was driving his Chevrolet in Collins County, Texas, and collided with Blakely, causing serious injuries to Blakely.
 
 
 3
 American's policy in question was sold to the Campbells by its recording agent, Neil Vaughn, who officed in Lubbock, and was signed by him and delivered by him to the Campbells, and the premium in the amount of $135.00 was collected by Vaughn and remitted by him to American. The premium was retained by American until October 31, 1966, when the sum of $90.00, representing the return of Richard R. Campbell's premium was deposited into the Registry of the Court by American. American's general agent, one Echlin, was located in El Paso, Texas.
 
 
 4
 Blakely gave notice to the Campbells of his claim for damages and later sued Campbell, III, in the District Court of Collin County for damages. All notices, demand letters and citations were forwarded by the Campbells to American promptly, but American refused to defend or accept liability under the policy. In April, 1967, by letter, Blakely offered to settle the action for $10,000.00; this offer was communicated to American, which again refused to investigate, negotiate or settle the claim.
 
 
 5
 Thereafter, in August, Blakely recovered in the Collin County action a judgment in the amount of $88,606.46, plus interest and costs, against Campbell, III.
 
 
 6
 On or about the time the damage action was filed by Blakely against Campbell, III, in Collin County, Campbell, Jr., brought an action for declaratory judgment in Lubbock County District Court against American to have the rights and duties under the policy determined. American removed this action to the Federal Court for the Northern District of Texas, Lubbock Division, where it remained until consolidated with this action by Blakely against American in the Dallas Division of the Northern District of Texas. By amended complaint, Campbell abandoned his action for declaratory judgment and sought recovery for breach of the policy contract, to include: (1) recovery of policy limits; (2) attorneys' fees and expenses, including medical expenses; (3) the excess above policy limits resulting from the negligence in refusing to defend and settle the Blakely suit, as well as (4) recovery of $50.00 paid on the excess judgment.
 
 
 7
 American joined issue denying that it was liable asserting that at the time of the collision in question it did not have any coverage on Richard R. Campbell, III, claiming that it had cancelled the policy of insurance in accordance with the provisions of the policy originally issued to Campbell, III.
 
 
 8
 Plaintiffs filed a motion for partial summary judgment, alleging that prior to the accident in question and prior to the cancellation in question, the agent, Neil Vaughn, had advised the mother of Richard R. Campbell, III, that in the event a cancellation was attempted by the company, to disregard it as he had taken care of things, or words to that effect. The Court granted that motion for partial summary judgment, ordering the defendant to pay the basic limits of the policy to discharge in part the judgment obtained by Blakely against Campbell, as well as medical payments and expenses of defense to Campbell. Thereafter, the matter was reviewed by the trial court and the original action confirmed in a subsequent order. Plaintiffs filed a motion for summary judgment seeking to hold the insurance carrier liable for the total amount of the judgment obtained by Blakely against Campbell on the basis that its refusal to defend and settle the litigation prior to its trial amounted to negligence as a matter of law, subjecting the insurance carrier to an excess judgment even though the pollicy limits were $10,000.00. In addition, the plaintiffs filed a motion to suppress, seeking to suppress all evidence of reasons for the refusal to defend on the part of the insurance carrier. The motion to suppress was sustained and the trial court also sustained the motion for summary judgment granting judgment providing affirmation of the partial summary judgment previously entered, also holding that the insurance carrier was liable for the total amount of the judgment obtained by Blakely against Campbell.
 
 
 9
 The two main thrusts of American's appeal assert error by the District Court in holding: (1) that American's attempt to cancel the policy was ineffective because of the actions of its recording agent Vaughn, and (2) the sustaining of plaintiffs' motion for summary judgment holding American liable for the total amount of the judgment obtained by Blakely against Campbell on the basis that its refusal to defend and to settle the litigation prior to its trial amounted to negligence as a matter of law, subjecting American to the excess judgment above the policy limits of $10,000.00. We affirm the District Court's granting of the motions for summary judgment.
 
 
 10
 Before considering the question of cancellation of the policy, it becomes necessary to narrate the circumstances surrounding the issuance of the American policy in question. It is undisputed that at all relevant times Neil Vaughn was a duly licensed local recording agent of American in Lubbock, Texas, and on October 8, 1965, American issued its liability policy covering Campbell, III, said policy being signed by Vaughn as authorized representative, and the policy premium in the amount of $135.00 was paid on October 8, 1965.
 
 
 11
 On November 23, 1965, American, through its general agents in El Paso, Texas, wrote Mr. Vaughn and stated, 'Unfortunately, due to the insured's driving record, we will not be in a position to provide coverage.' Mr. Vaughn answered with a plea 'to go along because of the supporting business and the improved conditions of the boy.'
 
 
 12
 On December 21, 1965, the general agents again wrote Vaughn and again asked for a replacement. Vaughn replied, 'I need some help on this risk * * * please.'
 
 
 13
 Vaughn heard nothing further from his company after he replied to the letter of December 21st until after the accident. On April 27, 1966, he received a credit memo reciting that the policy was 'canceled for nonpayment of budget contract,' although the premium had been paid in full at the time the policy was issued.
 
 
 14
 Sometime in late December or early January Vaughn related the following conversation with Mrs. Campbell, who handled all transactions for the Campbell family:
 
 
 15
 'Q. Will you please go ahead and tell us everything that was said to you.
 
 
 16
 'A. I mentioned to Mrs. Campbell that I had had some previous correspondence on the policy, but that I had heard, of course, nothing from the last letter, and that I assumed everything had been taken care of with the company, but in case she received anything in the mail or heard anything on it, to disregard it, that I'd taken care of it.
 
 
 17
 'Q. This would be in the nature of a cancellation notice or something of that order? Was that what you were referring to?
 
 
 18
 'A. Well, I did not anticipate a cancellation notice as I assumed this case would be handled like all the other automobile policies.
 
 
 19
 'Q. But you assured her if she got anything in the mail to just ignore it?
 
 
 20
 'A. That's right.
 
 
 21
 'Q. Her policy on R. R. Campbell with this insurance company was perfectly all right?
 
 
 22
 'A. That's right.'
 
 
 23
 Mrs. Campbell remembered the conversation in similar terms.
 
 
 24
 She testified that she and her son received the notice of cancellation and disregarded it as they had been told to do. She also testified that sometime later, but before the accident, she advised Vaughn 'that notice came, and we ignored it as you instructed'.
 
 
 25
 Asked by appellant's counsel why she did nothing about her son's policy after the notice of cancellation was received, she stated that she did nothing because Vaughn had told her 'that the notice of cancellation was to be ignored, that it was being sent by mistake'.
 
 
 26
 The District Court correctly held that the attempt to cancel the Campbell, III, policy was ineffective. Under Erie[1] the federal courts, in this type case, are bound by the substantive laws of Texas, and the scope of the recording agent's authority must be governed by Texas law. It is undisputed that during all times pertinent to this transaction Neil Vaughn was the appointed local recording agent for American. Texas Insurance Code, Vernon's Annot.Civil Stats., Art. 21.14, Sec. 2, reads in part (material to this issue):
 
 
 27
 'Sec. 2. Definitions; Certain Orders, Societies or Associations Not Affected.-- By the term 'Local Recording Agent' is meant a person * * * engaged in soliciting and writing insurance, being authorized by an insurance company * * * to solicit business and to write, sign, execute, and deliver policies of insurance, and to bind companies on insurance risks, and who maintain an office and a record of such business and the transactions which are involved, who collect premiums on such business and otherwise perform the customary duties of a local recording agent representing an insurance carrier in its relation with the public; * * *.'
 
 
 28
 Earlier Texas cases, prior to the enactment of this statute and its predecessor, gave broad authority to an agent who had the power to bind a company on insurance risks. As early as 1887, in Morrison v. Insurance Co. of North America, 69 Tex. 353, 6 S.W. 605 (1887), the Texas Court held:
 
 
 29
 'The ground on which insurance companies, under policies like that before us, are held liable for the acts of their agents, done in the exercise of lawful power, but not in the manner prescribed by the policy, is, the agent represents the company, and through him they have knowledge of any fact of which their agents have knowledge, and by failure promptly to repudiate their acts are held to ratify them, or to be estopped by their silence when they ought to have spoken.' (6 S.W. at 608)
 
 
 30
 The entire opinion in Morrison evidences conviction that the agent and the company are one and the same in dealing with the insured. This is made clear in Wagner v. Westchester Fire Insurance Co., 92 Tex. 549, 50 S.W. 569 at page 572 (1899) where the Court interprets Morrison as holding that 'an agent who has the power to make the contract of insurance, to issue the policy, and, in fact, exercise the highest authority which the law confers upon the corporation, stands in the place of the corporation itself.'
 
 
 31
 See also United States Fidelity & Guaranty Co. v. Taylor, 11 S.W.2d 340 (Tex.Civ.App.1928, Ref.).
 
 
 32
 The statute did not change the case law of Texas. On the contrary the Supreme Court of Texas in Shaller v. Commercial Standard Insurance Company, 158 Tex. 143, 309 S.W.2d 59 (1958), stated that, 'The purpose of the statute was to vest local recording agents with authority co-extensive with that of the company insofar as writing insurance is concerned and to remove all questions of the local agent's actual or apparent authority from the field of cavil or dispute.' (309 S.W.2d at 63).
 
 
 33
 Indeed, Shaller, supra, was cited with approval by Judge Bell in Aetna Insurance Company v. Paddock, 301 F.2d 807, 808, 809 (5 Cir., 1962), and Judge Gewin of this Court in South Falls Corp. v. Kalkstein, 349 F.2d 378 (5 Cir., 1965). There seems little doubt that the Texas courts, as well as this Court, have construed Article 21.14 and its predecessors as vesting the local recording agent with authority as extensive as that which the company possesses under its charter.
 
 
 34
 This being so, Neil Vaughn, as local recording agent for American, was invested with the power to retract any attempted cancellation, and the record clearly shows that Vaughn did retract any such attempt by informing the Campbells to disregard any cancellation notice from American.
 
 
 35
 The out-of-state authorities submitted by the appellant are not applicable to this Erie-type case, as the Texas cases, together with this Court's cases, construing the statute under consideration are lucid and rational.
 
 
 36
 The second question presented is whether the court below erred in holding as a matter of law that American was negligent in not defending and/or settling the claim and litigation in question, thus subjecting itself under the Stowers doctrine[2] to liability for the total amount of the judgment obtained by Blakely against Campbell, III.
 
 
 37
 By its contract,[3] American obligated itself (Part I-- Liability-- Coverage A and Coverage B) 'to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: (A and B) * * * and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient'.
 
 
 38
 Here American, promptly upon being advised of the collision, determined to stand upon its position that the insurance policy had been cancelled and was not binding. American reached this position through its internal machinery and consultations within its own organization between its agents, attorneys, and employees, and after being fully aware of what its recording agent Vaughn had represented to the Campbells about disregarding the cancellation notice. All efforts by the Campbells to induce the insurer to honor its policy or to investigate and settle with Blakely was to no avail.
 
 
 39
 American made no investigation of the facts of the collision, the relative rights and duties of the actors in that collision, the nature of the damages, the reasonableness of the offer of settlement of $10,000.00 made by Blakely, which offer the insured Campbell conveyed to American; or any of the representations or claims made by Blakely or Campbell; but to the contrary, refused to do any of these things. Under the factual context of this case, was the District Court required to submit to the jury the advices, counsel and recommendations which American's attorneys at law, employees, or other representatives made to American to determine if American was negligent by refusing to defend or in refusing to settle for $10,000.00 Blakely's claim, now acknowledged by American to have been a reasonable offer? We do not hold to the view that an insurer can relieve itself of its duty to investigate, negotiate, settle or defend a claim by showing advices from its investigators, adjusters or legal counsel. The duty to defend is an important and distinguishble part of the contract of insurance. In spite of American's outright promise to defend, the insurer now seeks to avoid responsibility for damages sustained by the assured by relegating its responsibility over to legal counsel as someone akin to an independent contractor. Those whom the insurer selects to execute its promises, whether attorneys, physicians, no less than Company-employed adjusters, are its agents for whom it has customary legal liability. Highway Insurance Underwriters v. Lufkin-Beaumont Motor Coaches, (Tex.Civ.App.) 215 S.W.2d 904; Smoot v. State Farm Mutual Automobile Ins. Co., 299 F.2d 525 (5 Cir., 1962).
 
 
 40
 Most of the cases dealing with the insurer's failure to settle involve an insurer who had assumed the defense of the action against the insured. Those cases differ from the case at hand, since American never assumed control of the defense in the case at hand. However, the reason American was not in control of the litigation is that it wrongfully refused to defend Campbell, III, and this breach of its contract to defend should not release it from its implied duty to consider Campbell's interest in the settlement. When American denied liability, it did so at its own risk, and although its position may not have been entirely groundless, if the denial is found to be wrongful, it is liable for the full amount of a judgment against its insured, including any portion in excess of the policy limits. See Travelers Insurance Co. v. Newsom, 352 S.W.2d 888 (Tex.Civ.App.); Highway Insurance Underwriters v. Lufkin-Beaumont Motor Coaches, supra.
 
 
 41
 Here it is undisputed that American intentionally breached its contract to defend Campbell, III, a contract which the lower court found to have been in force at the time of the collision, and thereafter the insurer wrongfully refused to bargain and settle, after a firm offer in writing was communicated to it, which offer American stipulated was reasonable. So, under the factual context of this case, we hold that under Texas law, negligence was established as a matter of law. We have carefully studied Seguros Tepeyac SA Compania Mexicana v. Bostrom et al., 347 F.2d 168 (5 Cir., 1965), a Texas case, cited by appellant and so ably written by Judge Wisdom, but we find nothing in this case that would lend solace to American but, to the contrary, find Seguros is authority for affirmance here.
 
 
 42
 Accordingly, the judgment of the court below is affirmed.
 
 GODBOLD, Circuit Judge (dissenting):
 
 43
 I respectfully dissent on the issue of cancellation of the policy.
 
 
 44
 The crux of the majority's conclusion is that 'Neil Vaughn, as local recording agent * * * was invested with the power to retract any attempted cancellation, and the record clearly shows that Vaughn did retract any such attempt by informing the Campbells to disregard any cancellation notice from American.'
 
 
 45
 In the situation where the insurer has given written notice of cancellation as required by policy provisions, and thereafter an agent, having notice of what the company has done, leads the insured to believe that the cancellation is ineffectual, the authorities are divided on whether the company is bound by the agent's action. See a review of the cases at 3 A.L.R.3d 1135. The question appears to be a new one in Texas. I do not differ with the conclusion that on such facts Texas would hold that, using the majority's language, the agent had 'retracted' the written notice. The difficulty is that whether, after the notice of cancellation was sent to and received by Mrs. Campbell, Vaughn retracted it is a disputed issue of material fact which made it impossible to decide the case on summary judgment.
 
 
 46
 The conversation quoted at length in the majority opinion occurred in late December, 1965 or early January, 1966. The company gave written notice of cancellation in February, 1966, and Mrs. Campbell acknowledges receiving it between February 15 and March 1. The accident occurred in April.
 
 
 47
 In his deposition, immediately following the above-quoted testimony, Vaughn testified further:
 
 
 48
 'A. Well, we (he and Mrs. Campbell) had no conversations in between our talking sometime in December up until the date of the accident.'
 
 And a few lines further:
 
 49
 'Q. Do you recall ever mentioning to you at any later time that she had received something from the company or had not received or do you remember anything about that?
 
 
 50
 'A. She never called me.
 
 
 51
 'Q. You did talk with her, though, from time to time about either her policies or someone else's policies or you did have later conversation with her, did you not?
 
 
 52
 'A. You mean prior to the accident?
 
 
 53
 'Q. Yes.
 
 
 54
 'A. I don't recall any specific instance where we--
 
 
 55
 'Q. To refresh your memory, do you remember her calling you about someone who worked out where she was who was wondering if he could get insurance if he was the owner of a car?
 
 
 56
 'A. Well, I don't remember that specifically. Sure don't.
 
 
 57
 'Q. Would it be true to say, then, you may have had conversation or you may not? You just don't recall specifically?
 
 
 58
 'A. That's right. I just don't recall.'
 
 Mrs. Campbell's testimony was as follows:
 
 59
 'Q. * * * So that after the receipt of the notice of cancellation, you did not call Neil Vaughn?
 
 
 60
 'A. At a later-- at sometime after the notice of cancellation came. And I cannot tell you what time other than it was previous to this accident and not just the day before. I called him on another matter not even relating to our business, and during the course of that conversation, I said to him, 'That notice came, and we ignored it as you had instructed,' or some such similar words.'
 
 
 61
 This testimony of Vaughn and Mrs. Campbell presented a jury issue of whether Vaughn talked to Mrs. Campbell at all after she received the cancellation notice. It presented a second issue of whether if he did talk to her the statement by her, 'That notice came and we ignored it as you had instructed,' was a retraction by Vaughn. In addition, differing versions by Vaughn and Mrs. Campbell of what was said in the late December-early January conversation, and of the facts existent at that time, raised a sharp credibility issue, and Mrs. Campbell's own description of that conversation is subject to the construction that it was the only one she ever had with Vaughn about the whole matter. (This is discussed further below.)
 
 
 62
 As I understand it the majority do not reach the question of whether Vaughn's statements in the December-January conversation, to disregard anything that might come from the company in the mail in the future, would prevent the company from a later effectual exercise of its power to cancel by written notice, so as to make the policy noncancellable. To reach this question would present a host of problems. At the threshold, it would present additional material factual disputes which could not be resolved on summary judgment. Mrs. Campbell says Vaughn told her in the December-January conversation that he had just received that morning a cancellation notice, that it had been mailed in error, that she would receive a copy and should ignore it. Vaughn testified flatly that he never received a copy of the cancellation notice, was not referring in the December-January conversation to a cancellation notice because he did not anticipate there would be one, and did not know anything was wrong about the Campbell policy until after the accident. To say that these conflicts, not only between the testimony of Vaughn and of Mrs. Campbell but between Mrs. Campbell's own versions as well, raise disputed issues of material facts, is an understatement.
 
 
 63
 To reach the question of whether an agent has power to cut off the right of the company to cancel at a future time would open a barrel of legal snakes as well. Is such an act, if done by the local agent, a type of act usually done by a local recording agent so as to be within the Texas local recording agent statute?[1] Did Campbell prove 'that he had relied on the apparent authority (of Vaughn) in good faith, in the exercise of reasonable prudence, and that he had thus been induced to change his position to his detriment'?[2] Was the written notice of cancellation given by the company effectual as a repudiation or disclaimer by the insurer of a prior unauthorized act of its agent done before detrimental change of position by the insured, so as to cut off the company's being estopped by silence?[3]
 
 
 64
 Turning back to what I understand has been decided, the material facts of what is said to be Vaughn's retraction of the cancellation notice were genuinely in dispute. I dissent from the denial to the insurer of a jury trial on that issue.
 
 
 65
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 PER CURIAM:
 
 66
 The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.
 
 
 67
 GODBOLD, Circuit Judge, dissents from denial of the petition for rehearing, for reasons stated in his dissenting opinion.
 
 
 
 [1]
 Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188
 
 
 [2]
 Stowers Furniture Co. v. American Indemnity Co., 15 S.W.2d 544 (Com.App., 1929, adopted by S.C. Texas), held that an automobile indemnity insurer was liable in a tort action for the amount of a judgment against its insured above the limits of its public liability policy, where it had negligently rejected a proposition to settle the claim involved for a sum within such limits after it had undertaken the defense of the claim. It is a landmark case in Texas, and the rule announced in it has come to be generally known as the 'Stowers doctrine', although that designation now includes the entire theory of this type action as made by the stowers case and the later Texas cases on the question
 
 
 [3]
 Part I-- Liability Coverage A-- Bodily Injury Liability; Coverage B-- Property Damage Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
 A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by any person;
 B. injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage'; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.
 
 
 [1]
 Aetna Ins. Co. v. Durbin, 417 S.W.2d 485 (Tex.Civ.App.1967), held that it was not shown that the local agent had actual or apparent authority to waive a requirement of written proof of loss. Shaller v. Commercial Standard Insurance Co., 158 Tex. 143, 309 S.W.2d 59 (1958), in referring to the local recording agent statute, speaks of 'authority co-extensive with that of the company insofar as writing insurance is concerned.' 309 S.W.2d at 63
 
 
 [2]
 Tex.Jur.2d Agency 46 at 487 (1959). See also Bankers Protective Life Ins. Co. v. Addison, 237 S.W.2d 694 (Tex.Civ.App.1951); Continental Oil Co. v. Baxter, 59 S.W.2d 463, 466 (Tex.Civ.App.1933)
 As to the necessity of proving reliance, in Wagner v. Westchester Fire Insurance Company, 92 Tex. 549, 50 S.W. 569 at 572 (1899), decided before the statute, the court found there was reliance. In New York Fire Insurance Company v. Reed, 138 S.W.2d 138 at 142 (Tex.Civ.App.1939), decided after the statute, the court found that the insured had relied. The statute was enacted to protect 'an unsuspecting public.' Id.
 Mental operations such as good faith, prudence and reliance may not appropriately be decided on summary judgment but must be resolved by trial. Riley-Stabler Construction Co. v. Westinghouse Electric Corp., 396 F.2d 274 (5th Cir. 1968) ('good faith'); Azalea Meats, Inc., v. Muscat, 386 F.2d 5 (5th Cir. 1967) ('due diligence'); Alabama Great Southern R.R. v. Louisville & N. R.R., 224 F.2d 1 (5th Cir. 1955) (mental operations necessary for wilful and wanton conduct).
 
 
 [3]
 Morrison v. Insurance Co. of North America, 69 Tex. 353, 6 S.W. 605 (1887) recognizes this right to disaffirm as to insurance contracts. Ford Motor Co. v. Maddox Motor Co., 3 S.W.2d 911 (Tex.Civ.App.1928) recognizes it as to contracts in general
 As the majority point out, the local recording agent statute did not change the prior case law. In fact, Morrison is the headwaters case.
 The cases relied upon by the majority concern only the effect of acts done by local agents where there has been no subsequent attempt by the company to disaffirm or repudiate. Wagner v. Westchester Fire Ins. Co., supra, Shaller v. Commercial Standard Ins. Co., supra, United States Fidelity & Guaranty Co. v. Taylor, 11 S.W.2d 340 (Tex.Civ.App.1928, Writ Ref.). See also Home Ins. Co. of New York v. Roberts, 129 Tex. 178, 100 S.W.2d 91 (Tex.Com.App.1937), New York Fire Ins. Co. v. Reed, supra.