**NORMAN BUNTIN, Plaintiff**

v.

**CONTINENTAL INSURANCE CO., Defendant**

Civil No. 77/99

District Court of the Virgin Islands

Div. of St. Croix

October 30, 1981

THOMAS ALKON, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

DAVID V. O'BRIEN, ESQ. (O'BRIEN & MOORE), Christiansted, St. Croix, V.I., *for defendant*

CHRISTIAN, *Chief Judge*

## MEMORANDUM

This case involves what has been aptly called the "double barreled proposition"[1] that an insurance company owes two distinct duties to its insured: the duty to defend lawsuits against the insured and the duty to consider in "good faith" any offers to settle such lawsuits.[2] Before the Court are cross-motions for summary judgment. The motions present two specific questions: does an insurer's honest but erroneous belief that there is no insurance coverage lessen the insurer's duty to give appropriate consideration to settlement offers; and, do the facts presented, as a matter of law, make out a breach of the insurer's settlement obligations? As set forth more fully below, we hold that an insurer's obligations are not decreased by a mistaken belief in noncoverage and that the facts presented do make out a breach of this insurer's duty to give appropriate consideration to settlement offers.

I

The parties are in agreement as to the material facts involved. On July 4, 1975, one Marion Edwards rented a car from Preferred Rentals, Inc., a St. Croix car rental agency insured by the defendant, Continental Insurance Company. On July 6, 1975, Edwards was in the town of Christiansted in the company of Clement Richardson and the plaintiff Norman Buntin. The three set out for Fredriksted in the car rented by Edwards, with Buntin at the wheel. En route, Buntin drove on the wrong side of the road and collided with an

---

[1] Landie v. Century Indemnity Co., 390 S.W.2d 558 (Mo. 1965).

[2] The term "good faith" has been used generally to describe the duties owed by an insurer to its insured in the context of settlement negotiations. The term has also been used to designate a particular standard of care required in settlement situations. Throughout this opinion, unless otherwise clear from the context, the term is employed in the former, general sense.

oncoming car. Edwards was killed in the accident and Richardson received serious injuries.

Preferred Rentals' insurance policy with Continental was in the amount of $100,000 per person and $300,000 per accident for bodily injury liability. The policy contained the following standard clause: ". . . The company shall defend any suit against the insured alleging such injury . . . and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

In April 1976 two lawsuits were filed against Norman Buntin. Marion Edwards' personal representative filed an action for wrongful death and Clement Richardson filed an action for personal injuries. Buntin promptly tendered the defense of these actions to Continental, which, in turn, disclaimed coverage under its policy with Preferred Rentals and declined to defend. The two actions were consolidated and tried to the Court in November 1976. Buntin was represented by privately retained counsel. The consolidated actions resulted in two judgments against Buntin: a judgment of $165,000, plus interest at 9%, and attorney's fees of $1,875, in the wrongful death action, and a judgment of $26,500, plus interest at 9%, and attorney's fees of $1,875, in the personal injury action.

On December 2, 1976, Buntin's counsel received a post-judgment settlement offer. The offer stated that the "Estate of Marion Edwards" would accept $100,000, in lieu of the $165,000 judgment, plus attorney's fees, if payment was made within thirty days, and that Clement Richardson would accept $26,500 and forgo interest and attorney's fees if payment was made within the same period. Buntin's counsel forwarded the settlement offer to Continental and requested that the insurer accept the offer. Further, Buntin's counsel made reference to the $7,500 in legal fees incurred by Buntin in the defense of the actions against him. Counsel closed his letter with the statement that if Continental failed to accept the settlement offer he would be "required to institute legal actions to protect (his) client's interests."

Four months elapsed before Continental responded to the letter from Buntin. By its letter dated April 1, 1977, Continental rejected the tendered settlement offer. As its reason for so doing Continental contended that "Mr. Buntin was not a driver insured by the Continental Insurance Company at the time of the accident."

In May 1977 Buntin commenced this action against Continental. The complaint alleges that Buntin was covered by Continental's

insurance policy with Preferred Rentals at the time of the 1975 accident and that Continental's refusal to defend or consider settlement offers in the cases stemming from that accident was therefore wrongful. Buntin seeks the full amount of the judgments against him, with interest, plus the costs of defending the tort actions, as damages for Continental's conduct. Continental in answering the complaint once again denied coverage. In September 1977, on cross-motions for summary judgment, the District Court agreed with Continental, found no coverage under the policy and entered judgment against Buntin. On appeal the United States Court of Appeals for the Third Circuit reversed, found coverage under the policy and remanded the cause for the entry of appropriate orders.

## II

On the basis of the foregoing, Buntin urges that, as a matter of law, Continental breached its duty to defend him in the lawsuits stemming from the 1975 accident. For this breach, Buntin seeks payment of the judgments against him up to the limits of Continental's policy with Preferred Rentals and reimbursement of the legal fees incurred in defending those actions. Buntin further urges that, as a matter of law, Continental breached its duty to give "good faith" consideration to the post-judgment settlement offer. For this breach, Buntin seeks payment of the amount of the judgments against him that is in excess of the policy limits.[3]

Continental seems to have acquiesced, at least in part, to Buntin's first contention: Continental has paid Clement Richardson's judgment in full and has paid $100,000 plus interest on the judgment in the wrongful death action. Continental has declined to pay the $7,500 attorney's fees incurred by Buntin and it has, of course, declined to pay that amount of the judgments in excess of the policy limits. Continental offers no basis for its rejection of the attorney's fees claim. As to the claim for amounts in excess of the policy, Continental urges that it cannot be liable for such excess absent a showing of collusion or "bad faith" in its refusal to settle and that, as a matter of law, its honest belief that there was no coverage cannot constitute collusion or "bad faith". Further, Continental urges that it reasonably rejected the settlement offers because it had a valid third party claim against the Estate of Marion Edwards. Continental's reasoning on this point is that Edwards breached his rental agree-

---

[3] Buntin also seeks punitive damages but has stated that he will forgo such relief in the event that summary judgment is entered in his favor in the matters sub judice.

ment with Preferred Rentals when he permitted Buntin to drive the rented car and that consequently his Estate is liable to Continental (as a third party beneficiary or a subrogee) for all damages incurred by Continental because of Buntin's driving.[4] Finally, Continental urges that its settlement obligations did not arise here because the settlement offer in the wrongful death action was made in the name of the "Estate of Marion Edwards" rather than in the name of Edwards' personal representative and was therefore incomplete and equivocal.

### III

■ "Under a typical automobile liability insurance policy, such as the one before us, the insurer undertakes three distinct types of obligations . . . . In the first place, the insurer agrees to indemnify against liability for personal or property damage . . . . Secondly, the insurer agrees to defend the insured against any suits arising under the policy 'even if such suit is groundless, false or fraudulent'. . . . Thirdly, by asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer . . . becomes obligated to act in good faith and with due care in representing the interest of the insured." Gedeon v. State Farm Mutual Automobile Ins. Co., 188 A.2d 320 (Pa. 1963); quoted with approval in Gedeon v. State Farm Mutual Automobile Ins. Co., 342 F.2d 15 (3rd Cir. 1965). In the instant case we are concerned with both the duty to defend and the duty to give "good faith" consideration to settlement offers. The parameters of these duties are well settled when encountered separately. The law is less established when an insurer is charged with having breached both duties in a single case. An understanding of the distinctions between the two duties is necessary to appreciate the rule to be applied when both duties are said to have been breached.

### A

■■ The insurer's duty to defend is contractual: most insurance policies expressly obligate the insurer to assume the defense of lawsuits arising under the policy. A breach of the duty to defend is a breach of contract regardless of the insurer's reasons for denying the defense. Thus if an insurer refuses to defend a claim on the basis of an honest but erroneous belief that the policy involved extends no

---

[4] Continental received permission to file such a third party complaint against the Estate of Edwards in April 1980. The Estate has not answered the complaint and a default has been entered against it.

coverage, the insurer has nevertheless breached his contract. In short, the insurer refuses to defend at his peril. 49 A.L.R.2d 694, 711; Couch on Insurance, 2d, § 51:52; Gedeon v. State Farm Mutual Automobile Insurance Co., 188 A.2d 320 (Pa. 1963); Lujan v. Gonzales, 501 P.2d 673, 678 (N.M. 1972); Landie v. Century Indemnity Co., 390 S.W.2d 558 (Mo. 1965). The liability of the insurer for the simple breach of the duty to defend is ordinarily limited to the amount of the policy involved plus the insured's expenses in defending the action. "[I]t is reasoned that, if the insured has employed competent counsel to represent him, there is no ground for concluding that the judgment would have been for a lesser sum had the defense been conducted by insurer's counsel, and therefore it cannot be said that the detriment suffered by the insured as the result of a judgment in excess of the policy limits was proximately caused by the insurer's refusal to defend." Communale v. Traders & General Insurance Company, 328 P.2d 198, 201 (Calif. 1958); Mannheimer Bros. v. Kansas Casualty & Surety Co., 184 N.W. 189 (Minn. 1921); 49 A.L.R.2d 694, §§ 9–15.

## B

■  Courts differ as to the theoretical basis for an insurer's duty to give "good faith" consideration to settlement offers. Some courts peg the duty to an implied covenant of good faith and fair dealing arising from the insurance policy (Murphy v. Allstate Ins. Co., 553 P.2d 584 (Calif. 1976); Vencill v. Continental Cas. Co., 433 F.Supp. 1371 (D. W.Va. 1977)), while other courts label the duty as sounding in tort and arising from the relationship between the insurer and the insured, 40 A.L.R.2d 168, §§ 4–6. There is agreement that the practical source of the insurer's obligation is its contractual right to exercise exclusive control over the defense of any claims against the insured and to effect a binding settlement of such claims.

Unfortunately the interests of the insured and the insurer are not always in harmony. This is particularly the case when there is a claim against the insured in excess of his insurance coverage and there is a settlement offer within the upper limits of that coverage. Clearly, acceptance of the settlement offer in such a situation would be in the insured's interest. The claim would be settled with the insurance company's funds and the insured would suffer no financial loss or exposure. Just as clearly, in the same situation, rejection of the settlement offer would be in the insurer's interest. At trial the insurer's exposure is limited to the policy limits, the settlement would require expending that amount in any event, therefore the

insurer would take no risk by going to trial in the hope that a verdict would be returned in an amount less than that sought in settlement. As the insurer has exclusive control over the decision concerning settlement, and this decision is so often fraught with conflicts of interest, the courts have imposed certain responsibilities on the insurer in the exercise of its power. Keeton, "Liability Insurance and Responsibility for Settlement," 67 Harv. L. Rev. 1136 (1954), McCarthy, Punitive Damages in Bad Faith Cases, §§ 2.2, 2.7 (1978); 40 A.L.R.2d 168, at 170 and 178.

■ ■ The nature of the insurer's responsibilities when confronted with a settlement offer has been the subject of much litigation. Generally, the courts have divided between imposing a duty to give "good faith" consideration to the settlement offer and imposing a duty to exercise reasonable care in considering a settlement offer.[5] We need not enter that particular debate for we agree that "[w]hether an insurer's conduct who rejects a settlement within policy limits is measured by the good faith test or the negligence test, *the real question* is the degree of consideration which an insurer must give to those interests of the insured which conflict with his own." McCarthy, supra § 2.13, at 116 (emphasis added); Keeton, supra, at 1142. "[T]he vast majority of courts have held and it is probably the accepted rule in all jurisdictions at this time, that the insurer is bound to give some consideration to the insured's interest in such a situation." 40 A.L.R.2d 168, at 171. Although there have been other positions taken, the general rule seems to be that the insurer must give equal weight to the interest of the insured as well as its own. See cases cited in McCarthy, supra § 2.13, at 117; 40

---

[5] It is agreed that the label given the insurer's duty has little effect on the outcome of the case alleging the breach of an insurer's settlement obligations and the standards and factors involved have tended to coalesce. 40 A.L.R.2d 168, at 170 and 171; Keeton, supra, at 1140; McCarthy, supra § 2.7; Wasserman v. Buckeye Union Casualty Company, 277 N.E.2d 569 (Ohio 1972). ". . . Many of the courts which have in terms rejected the 'negligence' test . . . [agree], nevertheless, that the insurer's negligence is a relevant consideration in determining whether or not it exercised the requisite good faith." Couch on Insurance, 2d, § 51:135 (1965); 40 A.L.R.2d 168, at 183–86. Other courts have determined that an insurer's negligence can constitute bad faith. Clark v. Interstate National Corp., 486 F.Supp. 145 (E.D. Pa. 1980), aff'd, 636 F.2d 1207 (3rd Cir. 1980). Some courts have long held that both good faith and ordinary care are required of an insurer in reaching its decision not to settle. Dumas v. Hartford Acc. & Indemnity Co., 56 A.2d 57 (N.H. 1947); G. A. Stowers Furniture Co. v. American Indemnity Co., 15 S.W.2d 541 (Tex. 1929). This seems to be the emerging trend and has been termed ". . . a realistic judicial recognition of the fact that the two doctrines are barely distinguishable insofar as they are used to determine the matter of the insurer's liability." McCarthy, supra § 2.8, at 108.

A.L.R.2d 168, § 6 and A.L.R.2d Later Case Service, supplementing that annotation. The fairest method of balancing the interests involved is for the insurer to treat the claim as though it alone were liable for the entire amount. The judicial measure of an insurer's compliance with his settlement obligations is whether a reasonably prudent insurer, without policy limits, would have accepted the settlement. See cases cited in McCarthy, supra § 2.15, at 120; Bell v. Commercial Ins. Co., 280 F.2d 514 (3rd Cir. 1960), quoting Cowden v. Aetna Casualty & Surety Co., 134 A.2d 223 (Pa. 1957); Baxter v. Royal Indem. Co., 285 So. 2d 652 (Fla. App. 1973), cert. dism'd, 317 So. 2d 725 (Fla. 1975); Kazmanich v. United Fire & Casualty, 410 P.2d 812 (Ore. 1966); Keeton, supra, at 1146 and 1148.

█ As previously noted, when an insurer rejects a settlement offer within policy limits it risks the insured's exposure to an excess judgment in the hope of reducing its own expenses. It is no more than fair that if the gamble fails it is the insurer who must pay the bill. Accordingly, if the insurer breaches its settlement obligations and an excess judgment is recovered against the insured, the insurer is liable for that excess. 40 A.L.R.2d 168 at 190; Keeton, supra.

## C

In the case sub judice we are confronted with more than an alleged breach of the duty to defend or an alleged breach of settlement obligations. Here we are confronted with allegations that this insurer breached both duties. The rationales underlying the rules applied in separate breach situations are somewhat inappropriate when dealing with a double breach. For a simple breach of the duty to defend, the insurer's liability is limited to the policy amount and the cost of defense because that is the extent of harm caused by the breach. When the breach of the duty to defend is coupled with the refusal of a settlement offer, the harm caused by the insurer's conduct is no longer so limited. On the other hand, excess liability for breach of settlement obligations is premised on the insurer's exclusive control of the defense and the right to make a binding settlement. When the breach of settlement duties is joined to the breach of the duty to defend, the insurer has assumed no exclusive control. Despite these complications, we hold that the insurer's obligations do not change and the applicable law is not altered when the insurer is charged with breaching both its defense and settlement duties.

Some courts have held that an insurer incurs no excess liability if it refuses a settlement offer on the basis of its erroneous decision to

deny coverage. See Fidelity & Casualty Co. of N.Y. v. Gault, 196 F.2d 329 (5th Cir. 1952). We are not so persuaded, as adopting this position would create the "paradoxical" result that an insurer who at least recognizes his duty to defend but falls short in his settlement obligations is exposed to greater liability than an insurer who breaches both duties. See Capitol Indemnification Corp. v. St. Paul Fire & Marine Ins., 357 F.Supp. 399 (W.D. Wis. 1972); Keeton, supra, at 1160. As the Supreme Court of California stated:

> Certainly an insurer who not only rejected a reasonable offer of settlement but also wrongfully refused to defend should be in no better position than if he had assumed the defense and then declined to settle. The insurer should not be permitted to profit from its own wrong.

Communale v. Traders & General Insurance Co., 328 P.2d 198, 202 (CA 1958). To the argument that there can be no excess liability absent exclusive control of the litigation, the answer must be that it was the insurer's wrongful refusal to defend which deprived it of control and thus its lack of control cannot be used to avoid liability. Communale, supra at 201; Blakely v. American Employers Insurance Co., 424 F.2d 728 (5th Cir. 1970).

We are aware of decisions in which the reasonableness of an insurer's decision to deny coverage has been considered in determining whether that insurer has breached its settlement obligations. Simpson v. Motorists Mutual Insur. Co., 494 F.2d 850 (7th Cir. 1974); Beck v. Pennsylvania National Mut. Cas. Ins., 429 F.2d 813 (5th Cir. 1970). But we decline to adopt that position. An insured is owed two distinct duties by an insurer. The insured has a right to expect that the insurer will both defend claims arising under the policy and treat settlement offers on such claims as if it alone were liable for any judgment entered. The latter obligation is fulfilled by a consideration of the merits of the case and the likelihood of a recovery in excess of the policy limits, not by an examination respecting the scope of the coverage of the policy. The insurer's breach of its contractual duty to defend cannot be the basis of a diminution in the insured's rights. Gedeon v. State Farm Mutual, 261 F.Supp. 122 (W.D. Pa. 1966); Luke v. American Family Mutual Insurance Co., 476 F.2d 1015 (8th Cir. 1973); Landie v. Century Indemnity, 390 S.W.2d 558 (Mo. App. 1965).

We hold that an insurer's honest but erroneous belief that there is no coverage under its policy of insurance in no way lessens the insurer's obligation to view a settlement offer as if it alone were

liable for any eventual judgment, nor does it diminish the insurer's liability in the event it breaches its settlement obligations. To hold otherwise would punish the insured for the insurer's breach of contract.[6]

## IV

The facts presented can now be examined in the light of the applicable law. Continental has breached its duty to defend Norman Buntin.[7] Continental has already paid most of the damages created by this breach and need only pay Buntin's defense expenses to fulfill its obligations. The courts are in accord that a recoverable item of defense expenses is reasonable attorney's fees. 49 A.L.R.2d 694, at 727 and 734. Buntin seeks $7,500 in attorney's fees and has submitted an affidavit from his defense counsel in support thereof. We do not address, at this juncture, the sufficiency of that affidavit to support an award of attorney's fees under the prevailing party provisions of the Virgin Islands Code, 5 V.I.C. § 541(b). We are here concerned with a liability incurred as a direct result of the defendant's conduct, liability with which this plaintiff should not be burdened. In the prevailing party situation the award is not as of right, but rather is within the court's discretion. Under the circumstances, Buntin is entitled to a summary judgment on the issue of breach of the duty to defend and is entitled to recover reasonable attorney's fees as damages for that breach.

Continental has also breached its settlement obligations to Norman Buntin. It at no time gave consideration to Buntin's interests in its rejection of the post-judgment settlement offer. It appears to the court that Continental rejected the post-judgment offer because of its belief that there was no coverage and that Continental's "incomplete offer" and "third party set-off" arguments are now afterthoughts thrown in the balance as "make weights." A belief in noncoverage does not justify the rejection of a reasonable settlement

---

[6] Communale, supra; Landie, supra; Luke, supra; Gedeon, supra; Weston Casualty & Surety Co. v. Herman, 405 F.2d 121 (8th Cir. 1968); Foundation Reserve Insur. Co. v. Kelly, 388 F.2d 528 (10th Cir. 1968); Harris v. Quinones, 507 F.2d 533 (10th Cir. 1974); Lujan v. Gonzales, 501 P.2d 673 (N.M. 1972); Gomez v. Leverton, 509 P.2d 725 (Ariz. 1973); Gibbs v. State Farm Mutual Ins., 544 F.2d 423 (9th Cir. 1976); Seward v. State Farm Mutual, 261 F.Supp. 805 (D. Fla. 1966).

[7] Buntin was determined to be a permissive user and thus an insured under Continental's policy with Preferred Rentals. Buntin v. Continental Ins. Co., 583 F.2d 1201 (3rd Cir. 1978). An insurer owes a permissive user the same duties which it owes to the named insured. Northwestern Mut. Ins. Co. v. Farmers Ins. Group, 76 Cal. App. 3d 1031, 143 Cal. Rptr. 415, 422 (1978).

offer. Certainly the settlement offer here was reasonable. That offer contemplated settlement well below two District Court judgments.

Even accepting Continental's position that it rejected the settlement for reasons other than its belief in noncoverage, the facts show a total disregard of the insured's interests. An assumption that Continental could recover from Edwards' Estate any sums paid out in the wrongful death action provides no justification for Continental's disregard of the settlement offer in Richardson's case. More importantly, if Continental believed that it had a valid set-off, it could have accepted the wrongful death settlement offer and sought its set-off against that reduced amount, thereby relieving Buntin of his liability for the judgment in excess of policy limits and in no manner harming its own position. Continental did not do so, thus evidencing its lack of concern for the interests of the insured.

■ Likewise, we do not accept Continental's argument that it was entitled to ignore the settlement offers because the offer in the wrongful death case did not on its face encompass all potential claimants. As with the "set-off" argument, this contention offers no justification for the rejection of the settlement offer in Richardson's case. To focus solely on the wrongful death claim evidences no concern for the interest of the insured. We agree with the court in Alt v. American Family Mut. Ins. Co., 237 N.W.2d 706 (Wis. 1976), which stated that an insurer breaches its duty to its insured if it ignores a reasonable settlement offer, unless it can honestly assess the offer as "jocular or frivolous." Due regard for Buntin's interests required some response other than a flat rejection three months after the expiration of the settlement offer. Even assuming that the offer was not all encompassing, it is clear that a reasonable insurer, subject to the $165,000 judgment, would not have simply ignored it. At the very least a prompt response was in order.

■ Normally the question of the breach of an insurer's settlement obligations is one of fact. Here, however, there is no evidence whatsoever that the insurer gave any consideration to the insured's interests in its handling of settlement opportunities. In such a situation, the insurer has breached its settlement obligations to the insured as a matter of law and the entry of summary judgment is appropriate. Luke v. American Family Mutual Ins. Co., 476 F.2d 1015 (8th Cir. 1973); Foundation Reserve Insur. Co. v. Kelly, 388 F.2d 528 (10th Cir. 1968); Herges v. Western Cas. & Sur. Co., 408 F.2d 1157 (8th Cir. 1969); Blakely v. American Employees Insur. Co., 424 F.2d 728 (5th Cir. 1970). Accordingly, plaintiff is also

entitled to summary judgment on the issue of breach of settlement obligation; thus he is entitled to receive the amount of the November 16, 1976, wrongful death judgment that is in excess of the policy limits as his damages.