CAY DIVERS, INC., a corporation, DO-IT FLUID WATER-SPORTS, INC., M/V CAY DIVER, RONALD CUTLER and HOWARD WILSON, Plaintiffs

v.

FREDERICK CHARLES RAVEN, as Representative of Certain Underwriters of LLOYDS OF LONDON Subscribing to that Certain Certificate of Insurance, No. 81.1184, Defendant

Civil No. 1984/137

District Court of the Virgin Islands

Div. of St. Croix

January 17, 1986

JOEL H. HOLT, ESQ., St. Croix, V.I., *for Do-It Fluid Watersports, Inc.*

WARREN B. COLE, ESQ. (ISHERWOOD, HUNTER & COLIANNI), St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

The issue presented in this motion for summary judgment is whether an insurer is relieved of its duty to indemnify when its insured settles a lawsuit over the carrier's objection. We hold that under the circumstances of this case, the insurer is relieved.

## I. FACTS

The plaintiffs ("Do-It Fluid"), two related corporations and their employees, operated a dive shop on St. Croix. The defendant ("Lloyds") provided Do-It Fluid with a $1 million liability insurance policy subject to the following exclusion:

> This Certificate does not insure any liability for Bodily Injury or Property Damage arising from swimming, snorkeling, spinnaker flying, nor any claim arising from scuba instruction or diving, or the sale, furnishing, or servicing of scuba gear or equipment.

The policy also contained the following "no action" clause:

> The Insured shall not make any admission of liability, either before or after any occurrence which could result in a claim for which the Underwriters may be liable. The Insured shall not interfere in any negotiations of the Underwriters for settlement of any legal proceedings in respect of any occurrence for which the Underwriters may be liable under this Certificate, provided, however, that in respect of any occurrence likely to give rise to a claim under this Certificate, the Insured is obligated to and shall take such steps to protect his and/or the Underwriters' interests as would reasonably be taken in the absence of this or similar insurance.

160

On January 5, 1982, David Wetherhorn drowned while participating in a scuba "resort course" conducted by plaintiff Howard Wilson for Do-It Fluid. It is undisputed that Wetherhorn was one of four novice divers who completed introductory scuba instruction that day and then boated offshore for an ocean dive. Once under water, Wetherhorn apparently panicked and aborted his dive. Wilson followed him to the surface and instructed Wetherhorn to swim back to the boat while he returned to the other divers who were waiting below. He was last seen alive swimming on his back toward the boat, a short distance away.

Wetherhorn's body was found in a reef the following day. An autopsy revealed a forehead wound but fixed drowning as the cause of death.

Wetherhorn's wife sued Do-It Fluid for wrongful death on three negligence theories. Two counts alleged inadequacy of instruction and supervision of the dive. These are clearly excluded from insurance coverage under the swimming exception. The third theory was added after Lloyds moved to dismiss the action herein for lack of coverage. The third theory alleged that the death resulted during Wetherhorn's unassisted attempt to board the boat. The estate sought damages of $1 million, in personam, against the individual and corporate defendants.

Initially, Lloyds refused to defend the wrongful death action and cross motions for summary judgment were filed. Noting that coverage under the third theory was, at best, slim, we ordered Lloyds to defend and reserved judgment on the issue of liability. Independent counsel was retained to defend Do-It Fluid and Lloyds reserved its right to continue to contest liability.

The acceptance by Lloyds of the defense of the wrongful death action was based on an exchange of letters between its attorney and the lawyer who represented the defendants in that action, who is also counsel of record for them in the matter at issue herein. The letter from Lloyds' attorney was dated October 22, 1984, and stated in pertinent part:

> I am prepared to recommend to my client that defense counsel be provided in the underlying wrongful death action on the condition that the provision of counsel will not waive the right of the underwriters to contest the duty of indemnification.

That letter received the following response from the attorney for the various defendants who are plaintiffs in this action:

My client (sic) has no objection to Lloyds' hiring another party to defend this action under a reservation of rights situation. This agreement however must include the express understanding that any lawyer retained by Lloyds to defend the case will in fact be representing Cay Diver, et al. and not Lloyds of London. I am sure you understand.

The attorney retained by Lloyds on behalf of those persons and corporations sued by Wetherhorn actively took up the defense and engaged in extended discovery. A jury was selected on July 29, 1985, for trial of the wrongful death action during the period commencing that day. Shortly after jury selection, however, the retained counsel entered into a consent judgment at the behest of Do-It Fluid for $686,815.00. Lloyds now moves for summary judgment on the basis that the settlement reached without its consent breached the no action clause of the policy. It argues that it is now relieved of any duty to indemnify.[1] Do-It Fluid cross moves for summary judgment to force Lloyds to pay the settlement amount.

## II. DISCUSSION

██ ██ The no action clause is standard in most liability policies, reserving to the insurer the absolute right to defend claims against the insured. See Rhodes, Couch on Insurance 2d, § 51:22 (1983). Essentially, it prohibits the insured from compromising a claim and a breach of this clause is generally deemed to occur when the insured admits liability or settles without the insurer's consent. Sargent v. Johnson, 551 F.2d 221, 232 (8th Cir. 1977); Coil Anodizers, Inc. v. Wolverine Insurance Co., 327 N.W.2d 416, 418 (Mich. Ct. Ap. 1982); Giffels v. Home Insurance Co., 172 N.W.2d 540, 542–43 (Mich. Ct. Ap. 1969). In this event, the insurer is relieved of its duty to indemnify the insured. E.g., Sargent, supra at 232; Couch supra, § 51:22.

██ In exchange for the right to control the litigation, the insurer must exercise good faith in its dealings with the insured. Sargent, supra at 231–32; Gibbs v. State Farm Mutual Insurance Co., 544 F.2d 423, 426–27 (9th Cir. 1976); Traders & General Insurance Co. v. Rudco Oil & Gas Co., 129 F.2d 621, 627 (10th Cir. 1942). Chemical

---

[1] The settlement was entered solely against Do-It Fluid and the suit against the remaining defendants was dismissed without prejudice. The applicable statute of limitations was waived for four years.

Applications Co. v. Home Indemnity Co., 425 F. Supp. 777, 779 (D. Mass. 1977). The carrier must use "diligence, intelligence, good faith, honest and conscientious fidelity to the common interests of the parties." Rudco, supra at 627. And it is well established that this responsibility imposes a good faith duty upon a carrier to settle a claim whenever the insured is exposed to personal liability. Gibbs, supra at 426–27; Rudco, supra at 627; Buntin v. Continental Insurance Co., 525 F. Supp. 1077, 1082 (D.V.I. 1981); Couch, supra, § 51:3.

Finally, in certain circumstances, an insurer who is guilty of bad faith may be ordered to indemnify the insured for the costs of an unauthorized settlement. Gibbs, supra at 427; Rudco, supra at 627; Buntin, supra at 1082; Couch, supra, § 51:24; Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L. Rev. 1136, 1164 n.69 (1954).

This general statement of the applicable insurance law provides a framework within which to consider the arguments advanced by Do-It Fluid to justify its settlement of the wrongful death action.

A. *Lloyds' Bad Faith*

Do-It Fluid argues that the no action clause was a nullity at the time of its settlement of the wrongful death suit because Lloyds withheld its consent in bad faith. Thus, it asserts, because Lloyds was first to breach the insurance contract, Do-It Fluid was free of the policy's prohibition against settlement.

■ It is beyond dispute that the insurer is bound in the Virgin Islands, as in most jurisdictions, to give equal weight to the insured's interest in deciding whether to settle a claim. Buntin, supra at 1082; see generally Keeton, supra. Thus, the insurer must deal promptly with the claim, Isadore Rosen & Sons, Inc. v. Security Mutual Insurance Co., 291 N.E.2d 380, 382 (N.Y. 1972), and use the utmost care in investigating the case, E. W. Henke v. Iowa Home Mutual Casualty Co., 97 N.W.2d 168, 174 (Iowa 1959); Olympia Fields Country Club v. Bankers Indemnity Insurance Co., 60 N.E.2d 896, 901–02 (Ill. App. Ct. 1945), and pursuing a settlement. Gibbs, supra at 427 (and cases cited therein).

■ In order to hold the no action clause unenforceable, however, the insured's interest must clearly be in conflict with that of its carrier and in no instance is a conflict sharper than where the insured's liability is clear and damages are likely to exceed the liability limits of the policy. Here the insured has an obvious

interest in settling the claim within the policy limits so that it will escape personal liability. The insurer's interest, on the other hand, rests in testing the claimant's allegations because its exposure is fixed. Thus, the Buntin court held the insurer liable for the full amount of a verdict because it refused an offer to settle within the policy limit despite obvious liability and the likelihood of an excess verdict. Buntin, supra at 1082. See also Gibbs, supra at 427; Rudco, supra at 626–27. Under these circumstances the insurer has a duty to settle a claim. Sargent, supra at 232 (quoting Rudco, supra at 626–27); Gibbs, supra at 427; Buntin, supra at 1082. In other words, there is no duty to settle where there is no risk to the insured. Lloyds makes no claim that the settlement was unreasonable.

And under the facts of this case, there was no risk to the insured from any verdict in excess of the policy coverage. It is important to note that Do-It Fluid does not make any claim at all that it may have been exposed to the risk of an excess verdict in the event the matter went to trial. This alone distinguishes the matter herein from most of the other cases in which an insurer rejected a settlement within policy limits. The only risk to the insured was that its tenuous link to policy coverage would ultimately be snapped at the trial of this declaratory judgment action. It may be superfluous, but it is also worth noting that the experienced trial counsel acting privately for Do-It Fluid was well aware that even if there had been a risk to his client from a verdict in excess of policy limits, in this jurisdiction the failure of the insurer to enter into a reasonable settlement shifts the excess risk to the insurer. Buntin, supra at 1082. Finally, we note that the personal judgment sought against the insureds was no more than the insurance limits ($1 million).

B. *Lloyds Denied Liability*

■ Next, Do-It Fluid contends that Lloyds' refusal to unconditionally defend and concede coverage bars the insurer from invoking the no action clause. As authority for this proposition, the plaintiff misstates the widely recognized rule that an insured may assume control of the litigation and settlement of its case without forfeiting its right to indemnification where the insurer has refused to defend the claim or denied coverage. E.g., Franklin v. Oklahoma City Abstract & Title Co., 584 F.2d 964, 968 (10th Cir. 1978) (and cases cited therein); Sargent, supra at 231 (and cases cited therein). The rationale underlying this rule is that once an insured is

abandoned by its carrier, it has the right to reduce its liability to a sum certain.

This exception is inapplicable to this case. Lloyds neither refused to defend nor denied coverage. Rather, it followed the procedure adopted by this Court for disputing coverage: it litigated a declaratory judgment on the issue of liability and defended under a reservation of rights. Dominic v. Hess Oil Virgin Islands Corp., 1985 St. X. Supp. ––– (Sept. 17, 1985) [citing Maneikis v. St. Paul Insurance Co. of Illinois, 655 F.2d 818, 821 (7th Cir. 1981)].

The correspondence cited earlier between the lawyers for Lloyds and the Do-It Fluid group is a clear expression of agreement by the latter for the former to defend under a reservation of rights. Having agreed to this procedure, Do-It Fluid could not undercut its own agreement with Lloyds by entering into an unauthorized settlement with Wetherhorn's estate.

Nor do we accept Do-It Fluid's claim that the attorney retained by Lloyds to defend them, having agreed to the settlement, could also bind Lloyds. As counsel for Do-It Fluid insisted in his letter to the attorney for Lloyds, dated October 22, 1984:

> This agreement however must include the express understanding that any lawyer retained by Lloyds to defend the case will in fact be representing Cay Diver, et al. and not Lloyds of London. I am sure you understand.

That was the precise premise under which the counsel retained by Lloyds to defend Do-It Fluid acted. But the mere fact that an insurance company retains an attorney to represent an insured against a lawsuit does not mean the attorney is also the insurance company's attorney, capable of binding the carrier. Bell v. Tilton, 674 P.2d 468, 472 (Kan. 1983); Hensley v. Hartford Accident & Indemnity Co., 451 S.W.2d 415 (Ky. 1970).

Since Lloyds adopted the procedure for simultaneously protecting the insured and itself until a full determination of its obligation was made, we cannot view the insurer's reservation of rights as tantamount to a denial of coverage, because, clearly, it is not. A fair reading of the amended complaint in the wrongful death action, in view of the exclusions in the policy, also suggests that Lloyds was not acting frivolously in claiming there was no coverage under the policy. The conditional defense is merely "a means by which, prior to determination of the liability of the insured, the insurer seeks to suspend the operation of the estoppel

doctrines through a non-waiver agreement." Apex Mutual Insurance Co. v. Christner, 240 N.E.2d 742, 747 (Ill. App. 1968).

Thus, we find that Do-It Fluid was obligated to adhere to the restrictions of its policy, including the no action clause, because Lloyds did not repudiate its obligations, and Do-It Fluid faced no risk by such adherence (except, of course, the possibility of noncoverage).

### C. *The Effect of Linn*

Lastly, Do-It Fluid argues that Lloyds may not dispute coverage because the settlement precluded a determination of whether the circumstances of Wetherhorn's death fell within the policy's coverage.[2] As authority, it cites Pacific Indemnity Co. v. Linn, 766 F.2d 754 (3d Cir. 1985), where a medical malpractice insurer was ordered to defend the best-selling author and diet doctor against claims by injured book readers. Pacific, defending under a reservation of rights, settled the suits and then sought to avoid indemnification on the grounds that a jury might have found that the injuries were excluded from coverage.

The Third Circuit resoundingly rejected this argument, reasoning that a contrary result would allow an insurer to shirk indemnification merely by settling claims where coverage is disputed. Linn, supra at 766.

■ We find Linn influential here but for precisely the opposite result suggested by Do-It Fluid. Linn concerned a carrier whose settlement prevented a determination of coverage while, in our case, it is the insured who compromised a tenuous claim. Like the Linn court, we will not allow a party to an insurance contract to employ the pre-trial settlement as a mechanism to avoid an adverse ruling on coverage.

## III. CONCLUSION

■ We hold that an insurer is relieved of its duty to indemnify where its insured settles a claim despite the objections of the carrier and the existence of a no action clause. This holding, however, is limited to situations where the policy limit equals or exceeds the insured's potential liability, and the danger of an excess verdict is thereby vitiated.

---

[2] This argument is superfluous in view of our finding that Do-It Fluid breached the no action clause. We will, nevertheless, dispose of the plaintiffs' last argument.

## SUMMARY JUDGMENT

THIS MATTER is before the Court on the cross-motions of the parties for summary judgment. The Court having filed its memorandum opinion of even date herewith, and the premises considered, now therefore it is

ORDERED AND ADJUDGED:

THAT defendant Lloyds of London's motion for summary judgment be, and the same is hereby GRANTED, and further

THAT plaintiff Do-It Fluid's motion for summary judgment be, and the same is hereby DENIED, and further

THAT the plaintiffs' action for declaratory judgment be, and the same is hereby DISMISSED WITH PREJUDICE.