Ronnie WHATLEY, Appellant,

v.

CITY OF DALLAS, Texas, Appellee.

No. 05–87–00620–CV.

Court of Appeals of Texas,
Dallas.

Aug. 3, 1988.
Rehearing Denied Sept. 30, 1988.

Bertran T. Bader, III, Dallas, for appellant.

Robert S. Dickey, Dallas, for appellee.

Before DEVANY, STEWART and HECHT, JJ.

HECHT, Justice.

Thrice now Ronnie Whatley has sued the City of Dallas to recover damages for a violation of his civil rights which occurred over a decade ago when Dallas police officer John Vito Del Gaudio used excessive force in arresting him. In this the latest of the three cases Whatley asserts the claim, assigned to him by Del Gaudio, that the City, under its self-administered liability protection plan, wrongly refused to defend Del Gaudio in Whatley's original civil rights action. By this claim Whatley seeks to recover the excess of his judgment against Del Gaudio in the civil rights action over the maximum benefits already paid by the City under its liability protection plan. The trial court rendered judgment on a jury verdict for the City.

We hold that:

—The City wrongly refused to defend Del Gaudio against Whatley's civil rights claim;

—Although the City's refusal to defend Del Gaudio was wrongful, there is no valid claim in this case that the City acted in bad faith, or that it negligently failed to settle Whatley's civil rights claim against Del Gaudio;

—Because there is no proof of bad faith or negligent failure to settle on the part of the City, and because Whatley covenanted not to enforce against Del Gaudio individually the judgment awarding Whatley damages, Whatley cannot recover from the City for its wrongful refusal to defend Del Gaudio damages awarded against Del Gaudio

in excess of the benefits provided by the City under its liability protection plan; and

—Whatley's action on Del Gaudio's wrongful refusal to defend claim is not barred by limitations.

Consequently, we affirm the judgment of the trial court.

## I

On the evening of May 2, 1977, Whatley was arrested and severely beaten by Dallas police officer Del Gaudio. Whatley has sued the City of Dallas three times to recover damages caused by Del Gaudio's use of excessive force in arresting him. The essentially undisputed facts material to this appeal derive from the conduct of this litigation.

### Whatley I

Whatley first sued the City, along with its police chief and officer Del Gaudio, on March 22, 1979, for damages resulting from Del Gaudio's violation of his civil rights. Whatley was unable to locate Del Gaudio to serve him with citation until May 2, 1981. After being served with suit papers, Del Gaudio tendered defense of Whatley's action against him to the City under its self-administered liability protection plan. The City refused to defend Del Gaudio on the grounds that Whatley's claim was not covered by the plan.

Prior to trial, Whatley settled with Del Gaudio. Their agreement called for Del Gaudio to stipulate that he had negligently used excessive force in subduing and arresting Whatley, to appear for a deposition, and to deposit $2,000 in escrow to be paid to Whatley in the event Whatley recovered nothing against the City and police chief. For his part, Whatley promised never to attempt to enforce against Del Gaudio individually any judgment obtained against him. Del Gaudio fully performed his obligations under the settlement agreement.

Having stipulated liability, Del Gaudio did not appear for trial. In a trial on liability issues only, a jury found for the City and police chief. In a separate, non-jury trial on damage issues, the trial court found that Whatley had suffered actual damages of $125,000 and incurred reasonable and necessary attorney fees of $17,500. The trial court on May 11, 1982, rendered judgment for the City and police chief on the verdict, and for Whatley against Del Gaudio for the total sum of $142,500.

### Whatley II

Whatley then filed a second action against the City for payment of his $142,500 judgment against Del Gaudio from benefits afforded by the City's self-administered liability protection plan, contending that his civil rights claim against Del Gaudio in *Whatley I* was covered by the plan. The trial court granted Whatley summary judgment against the City for $100,000, the maximum benefits offered under the plan. That judgment was affirmed on appeal. *City of Dallas v. Whatley*, 754 S.W.2d 233 (Tex.App.—Dallas 1984).

### Whatley III

To recover the $42,500 unpaid balance of his judgment against Del Gaudio, Whatley took an assignment of Del Gaudio's claim against the City for wrongfully refusing to defend him in *Whatley I*,[1] in exchange for the release of the $2,000 Del Gaudio deposited in escrow for Whatley under their settlement agreement in *Whatley I*. In the written assignment Whatley reaffirmed that he would never attempt to enforce the *Whatley I* judgment against Del Gaudio individually[2] and stated that he would seek

---

**1.** Specifically, the assignment describes the claims assigned as follows:

Del Gaudio conveys and assigns to Whatley any and all causes of action he may have against the City of Dallas, Texas whether founded in contract or tort for the failure of the City of Dallas to defend Del Gaudio in [*Whatley I* or otherwise to fulfill their duty to

Del Gaudio to defend him and pay any judgment that may be rendered against him in [*Whatley I*].

**2.** The assignment recites that Whatley could execute on the *Whatley I* judgment against Del Gaudio at any time. This recitation conflicts with the testimony of Whatley's attorney that

satisfaction of that judgment only from the City and its self-administered liability protection plan.

Whatley then filed this third suit against the City on May 2, 1985, alleging, as Del Gaudio's assignee, that the City's refusal to defend Del Gaudio was both a breach of contract and negligence. The case was tried before a jury, who found that the City was negligent in failing to defend Del Gaudio in *Whatley I*, but that such negligence was not the proximate cause of damage to Del Gaudio. The record reveals no discussion of Whatley's breach of contract claim by the trial court or counsel. The only jury issue requested or submitted pertaining to such claim was one inquiring as to reasonable attorney fees which Whatley sought only in connection with his contract claim. The trial court denied Whatley's motion for judgment non obstante veredicto and rendered judgment for the City on the verdict.

### II

Before addressing the parties' points of error, we find we must analyze the issues which appear to be raised by their arguments.

### A

■ An insurer's duty to defend its insured is ordinarily a contractual undertaking defined by the insurance policy. *See Goswick v. Employers' Cas. Co.*, 440 S.W.2d 287, 290–291 (Tex.1969); *see also Employers Nat'l Ins. Corp. v. Zurich Am. Ins. Co.*, 792 F.2d 517, 519 n. 1 (5th Cir. 1986); Annotation, *Consequences of Liability Insurer's Refusal to Assume Defense of Action Against Insured Upon Ground That Claim Upon Which Action Is Based Is Not Within Coverage of Policy*, 49 A.L.R.2d 694, 711–716 (1956). In this case the City, having assumed administration of its own liability protection plan, is cast in the role of an insurer, and the terms of insurance are contained in a City Council resolution adopting that plan. The City does not contest its role as equivalent

to an insurer, nor does it contend that its self-administered plan should be viewed any differently than a liability insurance policy. Accordingly, we treat the City in this case as an insurer under an ordinary liability policy.

Whether the City assumed the obligation to defend Del Gaudio against claims like Whatley's depends upon the terms of the City Council resolution adopting a self-administered liability protection plan. The relevant portions of that resolution state:

WHEREAS, the City of Dallas recognized the need of the officers and employees of the City whose duties are directly or indirectly connected with law enforcement to have liability protection from damages because of negligent acts, error, or omissions, and

WHEREAS, by council resolution ... the City was authorized to provide *such liability protection through insurance coverage*, and

WHEREAS, due to the appreciable increase in premiums proposed by the insurance company, it has been determined that the City can more economically provide *the same liability protection under a self-administered plan*, and

WHEREAS, it is recommended that the City Manager *not renew the police professional liability insurance policy and that such coverage be provided by a self-administered plan*. Now, therefore:

BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS: SECTION 1. That the City Manager be authorized to provide the officers and employees of the City of Dallas whose duties are directly or indirectly connected with law enforcement professional liability protection from damages because of negligent acts, errors, or omissions relating to their employment *under a self-administered plan to the same extent as is now provided in policy of insurance acquired by the City* ... a copy of [which is] filed with this resolution.

.    .    .    .    .

Whatley agreed in his settlement with Del Gaudio in *Whatley I* not to enforce against Del

Gaudio individually any judgment obtained. The record does not explain this contradiction.

SECTION 4. That the City Attorney shall provide all legal representation in accordance with the City Charter.

(Emphasis added.) The policy attached to the resolution stated, in part:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of negligent acts, errors or omissions of the insured .... to which this policy applies, and *the company shall have the right and duty to defend any suit against the Insured seeking damages on account of ... Personal Injury ..., even if any of the allegations of the suit are groundless, false or fraudulent....*

"Personal Injury" means ... assault and battery ... or deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States of America ... for which law enforcement officers may be held liable to the party injured in an action at law, suit in-equity, or other proper proceeding for redress; However, no act shall be deemed to be, or result in Personal Injury unless committed in the regular course of [sic] duty by the Insured....

(Emphasis added.)

The City originally refused to defend Del Gaudio on the grounds that his conduct made the basis of Whatley's complaint was not covered by the plan. Specifically, the City took the position that Del Gaudio's alleged wrongful conduct was intentional, not negligent, was outside the course of his employment, and was contrary to police and City policy.[3] This issue was resolved against the City in *Whatley II*, which held that Whatley's claim against Del Gaudio was covered by the City's liability protection plan.

The City now argues that even if its plan covered Whatley's claim, undertaking Del Gaudio's defense to the claim was discretionary, not obligatory. Pointing to section

4 of the resolution adopting the plan, which directs the City Attorney to "provide all legal representation in accordance with the City Charter", the City argues that chapter VII of the City Charter gives the City Attorney discretion whether to provide such legal representation. The only portion of chapter VII to which the City specifically refers, and the only portion which appears relevant to its argument, is section 3(12), which requires the City Attorney:

when deemed for the best interest of the city, to advise or represent officers and employees of the city in litigation in matters arising out of the official conduct of their office or duties in the course of their employment....

This Charter provision gives the City Attorney discretion generally to decide whether to represent city officers and employees in litigation involving their official conduct. It does not, however, give the City Attorney the same discretion in deciding whether to represent law enforcement officers like Del Gaudio against claims like Whatley's because the City Council, in setting up its liability protection plan, preempted exercise of such discretion. The City Council's resolution determines that City law enforcement officers should have the same liability protection under the self-administered plan as they had under the lapsed insurance policy attached to the resolution. That policy unconditionally obligated the insurer to defend the insured against any covered claim. The resolution allows for no greater discretion on the part of the City Attorney than the City's previous insurer enjoyed. An officer's right to defense discretionary with the City Attorney hardly equates to the right to defense afforded by the policy attached to the resolution. Section 4 of the resolution reflects no intention by the City Council to impair so significantly the benefits conferred upon its employees by section 1. Section 4 does not take away what section 1 gives. Rath-

---

**3.** The City may have given as further reason for refusing to defend Del Gaudio that it, too, was a defendant to Whatley's claims, and Del Gaudio's defense might conflict with its own. The City claims it did not want to share representation by the City Attorney with Del Gaudio, whom the City apparently believed to be liable to Whatley. However, the City has not explained why, if it determined a conflict existed, it did not obtain independent, outside counsel to represent either itself or Del Gaudio.

er, section 4 simply assigns the duty of legal representation to the City Attorney instead of outside counsel.

We conclude that the City obligated itself to defend its law enforcement officers like Del Gaudio against claims like Whatley's. Undisputedly, the City refused to defend Del Gaudio in *Whatley I.* By such refusal the City breached its duty under its liability protection plan to render such defense.

### B

■ Although the City's refusal to defend Del Gaudio in *Whatley I* was wrongful, Whatley has never claimed that the City acted in bad faith. Whatley did attempt to claim, belatedly, that the City was negligent in failing to settle his claim against Del Gaudio in *Whatley I* within the limits of its liability protection plan, commonly referred to in Texas as a "Stowers" claim. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved). We conclude, however, that the trial court properly refused to allow Whatley to assert this claim.

Whatley first attempted to assert a "Stowers" claim by trial amendment after the evidence in the instant case was closed. The trial court disallowed the amendment. Whatley now argues that the amendment should have been allowed because the issue was tried with the City's implied consent. *See* TEX.R.CIV.P. 67. In support of his argument, Whatley cites the following testimony of two witnesses admitted without objection by the City that it was outside the scope of Whatley's pleadings. The first witness, the attorney who represented Whatley in *Whatley I,* testified that he never offered to settle with the City, that the City never offered to settle with him, that if the City had offered to settle within the limits of its liability protection plan he would have recommended that Whatley accept it, and that Whatley would have followed his advice. The second witness, another attorney called as an expert, testified

that the City had a duty to offer to settle Whatley's claim within the limits of its liability protection plan, that if it had made such an offer Whatley would have accepted it, and that its failure to make such an offer was a failure to use ordinary care.

■ To determine whether parties have impliedly consented to trial of an unpleaded cause of action, the trial court must carefully consider the proceedings as a whole. *See Jay Fikes & Assoc. v. Walton,* 578 S.W.2d 885, 889 (Tex.Civ.App.— Amarillo 1979, writ ref'd n.r.e.); *see also Ranger Ins. Co. v. Robertson,* 707 S.W.2d 135, 142 (Tex.App.—Austin 1986, writ ref'd n.r.e.). The trial court has broad discretion in determining whether an unpleaded claim has been tried by implied consent of the parties. *See Jones v. Blackmon,* 419 S.W. 2d 434, 440 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.); *Precision Motors v. Cornish,* 413 S.W.2d 752, 758 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r. e.). The trial court is to exercise that discretion liberally in favor of justice. *See Chambless v. Barry Robinson Farm Supply, Inc.,* 667 S.W.2d 598, 601 (Tex.App.— Dallas 1984, writ ref'd n.r.e.). However, trial amendments are to be the exception, not the rule, and should not be allowed in doubtful cases. *See Jay Fikes & Assoc.,* 578 S.W.2d at 889.

A careful review of the record in this case persuades us that the trial court did not abuse its discretion in refusing to allow Whatley to add a "Stowers" cause of action against the City after the evidence in the case was closed. The evidence pertaining to Whatley's "Stowers" claim was not extensive, and the absence of objection to that evidence does not imply the City's consent to try the claim as much as counsel's remissness in objecting. Moreover, given that the City asserted the defense of limitations to Whatley's wrongful refusal to defend claim, it seems only reasonable that the City would have asserted the same defense to a "Stowers" claim if it had intended that that claim be tried.[4] The

---

**4.** We note that, on the record before us, the City should have prevailed in asserting that any "Stowers" claim was barred by limitations. Any

"Stowers" claim against the City accrued when the judgment in *Whatley I* became final in June 1982, and must have been brought within two

trial court indicated that a "Stowers" claim was not sufficiently developed in the record to warrant a trial amendment. We agree.

■ Whatley also argues that the trial amendment should have been allowed because the City did not object to it on the grounds of unfair prejudice or surprise. Ordinarily, a party objecting to a trial amendment must demonstrate that unfair prejudice or surprise would result if the amendment were allowed. *See Chambless v. Barry Robinson Farm Supply, Inc.,* 667 S.W.2d 598, 601 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). However, the trial court's exercise of discretion must be judged by the record and not by whether a plea of surprise or prejudice is asserted. *See Alamo Ambulance Service, Inc. v. Moulton,* 402 S.W.2d 200, 205 (Tex.Civ. App.—San Antonio 1966), *aff'd,* 414 S.W.2d 444 (Tex.1967). On this record, the unfairness of adding a "Stowers" claim to the case after the evidence was closed was apparent.

There is an even more important reason why the trial court did not abuse its discretion in refusing to allow Whatley a trial amendment to assert a "Stowers" claim. A claim that an insurer negligently failed to settle an injured party's action against an insured belongs to the insured, and the injured party has no standing to assert it. *Becker v. Allstate Ins. Co.,* 678 S.W.2d 561 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Samford v. Allstate Ins. Co.,* 529 S.W.2d 84 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Cook v. Superior Ins. Co.,* 476 S.W.2d 363 (Tex. Civ.App.—Beaumont 1972, writ ref'd n.r. e.); *see also, Hernandez v. Great Am. Ins. Co.,* 464 S.W.2d 91 (Tex.1971). Whatley has neither asserted nor proved that Del Gaudio assigned any "Stowers" claim to him. Del Gaudio's assignment of his wrongful refusal to defend claim to Whatley does not include a "Stowers" claim. The trial court did not err in refusing to allow Whatley to assert a "Stowers" claim he did not own.

In sum, while we have concluded that the City's refusal to defend Del Gaudio in *Whatley I* was wrongful, there is no valid claim in this case that the City acted in bad faith or negligently.

### C

■ The absence of a claim in this case that the City acted in bad faith in refusing to defend Del Gaudio, or that it was negligent in failing to settle Whatley's claim against Del Gaudio, precludes Whatley from recovering on his wrongful refusal to defend claim damages in excess of the limits of the City's liability protection plan. This conclusion is supported both by case authority and by logic.

In *Blakely v. American Employers' Insurance Co.,* 424 F.2d 728 (5th Cir.1970), Blakely sued Campbell, American's insured for damages arising out of an automobile accident. American was notified of the suit but refused to defend its insured. American was also notified of Blakely's offer to settle for the policy limits but refused to make any effort to negotiate a settlement. Blakely recovered a judgment in excess of the policy limits and then sued American both for wrongful refusal to defend Campbell and for negligent failure to settle. The district court granted summary judgment for Blakely for the full amount of his judgment, holding that as a matter of law American negligently failed to settle Blakely's action against Campbell. The court wrote:

> Most of the cases dealing with the insurer's failure to settle involve an insurer who had assumed the defense of the action against the insured. Those cases differ from the case at hand, since American *never assumed control of the defense* in the case at hand. However, the reason American was not in control of the litigation is that it wrongfully refused to defend Campbell, III, and this breach of contract to defend should not release it from its implied duty to consider Campbell's interest in the settlement.

When American denied liability, it did so at its own risk, and although its position may not have been entirely groundless, if the denial is found to be wrongful, it is liable for the full amount of a judgment against its insured, including any portion in excess of the policy limits....

Here it is undisputed that American intentionally breached its contract to defend Campbell, III, a contract which the lower court found to have been in force at the time of the collision, and thereafter the insurer wrongfully refused to bargain and settle, after a firm offer in writing was communicated to it, which offer American stipulated was reasonable. So, under the factual context of this case, we hold that under Texas law, negligence was established as a matter of law.

*Id.* at 734.

The Fifth Circuit recently emphasized the importance of the claim of negligent failure to settle to the ruling in *Blakely*. In *Employers Nat'l Insurance Corp. v. Zurich American Insurance Co.*, 792 F.2d 517 (5th Cir.1986), Zurich, the primary insurer, paid claims up to what it considered was the limit of its coverage and refused to defend any other claims. After it was determined that Zurich owed additional coverage, its insured and others sued to recover judgment awards suffered in excess of Zurich's coverage limits. The Fifth Circuit wrote:

> The dispositive question here is this: under Texas law, if a liability insurer breaches its duty to defend the insured, and if the insured is thereafter held to be liable to a third party for an amount in excess of the policy limits, shall the insurer be held liable for the full amount of the judgment? The district court has rendered summary judgment against the insurer for the excess amount on a record that shows only that the insurer violated its contractual duty by refusing to defend the insured, and reflects the subsequent judgments acknowledged to have been rendered against the insured. No proof is made of bad faith or opportu-

nity to settle within policy limits. We reverse this judgment.

.    .    .    .    .

> The Texas cases imposing excess liability upon the insurer for breach of this duty have arisen out of the insurer's loss of the opportunity to settle the claim within policy limits. None of them have [sic] imposed liability solely because the insurer denied coverage and refused to take responsibility for defending the insured. The Texas courts might well subject the insurer to no more than the consequences of its breach of contract for failing to defend, and might hold that the duty of care to compromise the claim does not thereafter rest on the insured. This court, however, in an *Erie* guess has decided that the duty to settle the claim persists even after coverage has been denied [citing *Blakely*]....

> While this panel is bound by the *Blakely* panel's view that under Texas law the duty to exercise reasonable care to settle claims survives the insurer's breach of its duty to defend, we find no justification for imposing strict liability on the insurer without any evidence that the claim could have been settled for less than the judgment if the insurer had conducted the defense.

> There is some authority for holding an insurer liable for the excess judgment where it has acted in bad faith in denying coverage and refusing to defend.... We do not believe, however, that Texas would impose this liability without a causal connection between the action of the insurer and the injury to the insured, *i.e.*, the judgment in excess of policy limits.... The prevailing view is that without an offer or a showing that the claim could have been resolved for the policy limits, the excess judgment is not an injury caused to the insured by the insurer....

> We find only one Texas case where the contention was made that the wrongful refusal to defend the insured was a sufficient ground to hold the insured liable for the subsequent judgment beyond policy limits. That contention was rejected,

without discussion, as being "without merit." *Dairyland County, etc. v. Estate of Basnight,* 557 S.W.2d 597, 603 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.).

Upon the authority of the *Basnight* case, the *Stowers* rationale as we read it in the Texas cases, and the prevailing view in other jurisdictions, we reverse the judgment of the district court. We need express no opinion on the Texas law under circumstances where the refusal to defend is made in bad faith or where the underlying claim could and should have been settled within the policy limits. *Id.* at 518, 520–521.

*Texas United Ins. Co. v. Burt Ford Enterprises, Inc.,* 703 S.W.2d 828, 835 (Tex. App.—Tyler 1986, no writ), decided only months before *Employers,* reaches the same result. In that case the court held that an insurer that refuses to defend its insured when it is obligated by its policy to do so is liable for—

—any damages adjudged against the insured, within policy limits;

—the amount, within policy limits, of any reasonable settlement reached by the insured with the claimant in good faith without fraud or collusion;

—all reasonable expenses incurred by the insured in defense or settlement of the claim, including attorney fees and court costs; and

—all reasonable expenses of prosecution of the claim for wrongful refusal to defend, whether by the insured or his claimant-creditor or assignee, including attorney fees and court costs.

*See* Annotation, *Consequences of Liability Insurer's Refusal to Assume Defense of Action Against Insured Upon Ground That Claim Upon Which Action Is Based Is Not Within Coverage of Policy,* 49 A.L.R.2d 694 (1956). Under *Texas United,* an insurer's only liability in excess of policy limits is for litigation expenses. *Texas United* involved no claim of bad faith or negligence.

■ An insurer's breach of its contractual duty to defend its insured, like any breach of contract, may give rise to liability for all damages directly and foreseeably resulting from the breach. If the City had defended Del Gaudio in *Whatley I,* it would not be liable to Whatley and Del Gaudio for more than the liability protection it provided Del Gaudio, absent a showing that it negligently failed to settle with Whatley within the limits of its protection. Having failed to defend Del Gaudio, the City's liability should not exceed the limits of the liability protection it provided, at least in the absence of a proper claim and proof of negligence or bad faith in refusing to settle the claim.[5]

### D

Moreover, Whatley is not entitled to recover from the City damages adjudged against Del Gaudio in excess of the City's liability protection plan because Whatley has covenanted never to enforce such judgment against Del Gaudio individually.

■ As a rule, a claimant who covenants not to enforce any judgment he might obtain against an insured individually does not release the insurer who has wrongfully refused to defend its insured from liability within policy limits. *See Young Men's Christian Ass'n v. Commercial Standard Ins. Co.,* 552 S.W.2d 497 (Tex.Civ.App.—Ft. Worth 1977), *writ ref'd n.r.e.,* 563 S.W.2d 246 (Tex.1978); *First Nat'l Indem. Co. v. Mercado,* 511 S.W.2d 354 (Tex.Civ.App.—Austin 1974, no writ); *Langdeau v. Pittman,* 337 S.W.2d 343 (Tex.Civ.App.—Austin 1960, writ ref'd n.r.e.). This rule is supported by law and policy. The legal basis for the rule is that a person who recovers a judgment against an insured is entitled to enforce the judgment directly against the insurer to the limits of the policy without attempting to enforce it against the insured. *See Seaton v. Pickens,* 126 Tex. 271, 87 S.W.2d 709, 711 (1935). Inasmuch as the judgment creditor has the right to enforce his judg-

---

**5.** We express no opinion on whether *Blakely* is correct in holding that an insurer that refuses to defend its insured in breach of its duty to do so may incur liability in excess of the policy limits if it is shown to have acted negligently or in bad faith in refusing to settle the claim.

ment against both the insured and the insurer independently, agreeing not to enforce it against the insured does not affect his right to enforce it against the insurer. The policy basis for the rule is that it reasonably allows the insured who is wrongfully left to defend himself to secure protection against his own individual liability and hold his defense costs to a minimum. As long as the insured does not act in bad faith or in collusion with the person claiming against him, the covenant not to enforce adjudged damages against the insured does not bar recovery from the insurer within its policy limits.

Although we are aware of no Texas case on the issue, we conclude that the same rule does not apply to allow recovery against an insurer in excess of policy limits. Neither of the bases for the rule applies when recovery is sought beyond policy limits. The judgment creditor of the insured has no direct right of action against the insurer for damages exceeding policy limits. *See Hernandez v. Great Am. Ins. Co.*, 464 S.W.2d 91 (Tex.1971). To recover more than the policy limits from the insurer, the judgment creditor must assert the insured's injury. If the judgment cannot be enforced against the insured, no such injury exists. The insured may assign to his judgment creditor any claim he has against his insurer for payment of the excess award, but such assigned claim is actionable only as long as the insured remains liable for the excess damages. To allow the creditor to release the insured from liability for such excess damages without effecting the release of the insurer would give the creditor and insured the power unilaterally to extend the insurer's liability. This would defeat, not serve, public policy.[6]

Accordingly, we conclude that by covenanting never to enforce against Del Gaudio individually the $42,500 awarded in excess of the City's liability protection plan, Whatley is precluded from recovering such damages against the City.

---

6. We express no opinion as to whether a judgment creditor may recover against an insurer damages awarded against its insured in excess

**E**

The City contends that Whatley's claim is barred by limitations. As we have noted above, an insurer's duty to defend its insured is ordinarily a contractual undertaking defined by the insurance policy. A claim of wrongful refusal to defend is thus a claim for breach of the contract of insurance and as such, the four-year statute of limitations applies. *Nash v. Carolina Cas. Ins. Co.*, 741 S.W.2d 598, 600 (Tex.App.—Dallas 1987, writ denied); *Hastings v. Royal–Globe Ins. Co.*, 521 S.W.2d 869, 872 (Tex.Civ.App.—San Antonio 1975, no writ); *see* TEX.CIV.PRAC. & REM. CODE ANN. § 16.004 (Vernon 1986). A cause of action for wrongful refusal to defend accrues when the refusal to defend occurs. *Nash*, 741 S.W.2d at 600–601.

The evidence is not clear exactly when the City refused to defend Del Gaudio. The assignment by Del Gaudio of his wrongful refusal to defend claim to Whatley recites:

> [*Whatley I*] was served upon Del Gaudio on or about the 2nd day of May, 1981. Immediately thereafter Del Gaudio made due demand upon the City of Dallas, Texas to furnish him a defense under such liability policy plan. The City refused to do so. Thereafter, Del Gaudio retained private counsel to represent him in such action....

The City stipulated that Del Gaudio retained private counsel on June 30, 1981. An assistant City attorney recalled discussing with Del Gaudio whether the City would defend him in *Whatley I* sometime before the first trial setting on November 16, 1981, although he could not recall exactly when those conversations occurred.

The present suit was filed on May 2, 1985, as evidenced by the docket sheet. Taking the earliest date the City could have refused to defend Del Gaudio as May 3, 1981, the day after he was served, we conclude that this action was filed within

---

of policy limits for which the insured is not personally liable if the insurer has acted negligently or in bad faith.

four years of the date it accrued and is therefore not barred by limitations.

## III

We view the pleading and trial of this case as somewhat confused. Whatley pleaded the City's wrongful refusal to defend Del Gaudio both as a breach of contract and as negligence. The trial court submitted the case to the jury on negligence issues. We can find in the record no discussion of Whatley's contract claim.

In our view, Whatley's claim sounds in contract, not in tort. The City's breach of its duty to defend Del Gaudio, and the absence of any right of Whatley to recover for such breach, are both established as a matter of law in this case. The judgment of the trial court denying Whatley recovery against the City, although apparently rendered on the wrong theory, was nonetheless correct.

The confusion below has continued on appeal. Two of Whatley's four points of error aim aside the target. However, we believe Whatley's arguments fairly raises all the issues we have discussed. Accordingly, we have addressed those arguments apart from his specific points of error. We now turn to the points themselves.

 Whatley asserts in his first point of error that the court erred in denying his motion for judgment non obstante veredicto because *Whatley II* is res judicata of the City's liability for wrongfully refusing to defend Del Gaudio. *Whatley II* established only that Whatley's civil rights claim against Del Gaudio was covered under the City's liability protection plan. Although we have concluded that the City breached its duty to defend Del Gaudio, *Whatley II* does not establish that breach under the doctrine of res judicata or otherwise. Whatley's first point of error is therefore overruled.

Whatley asserts in his second point of error that the trial court erred in denying his motion for judgment non obstante veredicto because the City's refusal to defend Del Gaudio proximately caused his damages as a matter of law. We do not consid-

er proximate cause to be an element of Whatley's claim in this case. Whatley's point is thus a non sequitur. However, we understand by the arguments Whatley makes under this point of error that his complaint is that the City's liability has been established as a matter of law. Broadly reading this point of error, we overrule it.

Whatley asserts in his third and fourth points of error that the court erred in refusing to allow Whatley to assert by trial amendment a claim against the City for negligent failure to settle *Whatley I*, and in refusing to submit such claim to the jury. For the reasons we have set forth above, we overrule points of error three and four.

Finally, the City complains in a single cross-point that the trial court erred in not holding that Whatley's claim in this case is barred by limitations. For the reasons we have given, we overrule the City's cross-point.

The judgment of the trial court is affirmed.