**COMMONWEALTH COUNTY MUTUAL INSURANCE COMPANY a/k/a Viking County Mutual Insurance Company, Appellant,**

v.

**Lauro MOCTEZUMA, Appellee.**

No. 04–93–00689–CV.

Court of Appeals of Texas, San Antonio.

April 26, 1995.

Rehearing Denied May 25, 1995.

W. Wendell Hall, Renee A. Forinash, Fulbright & Jaworski, L.L.P., San Antonio, for appellant.

Kevin B. Miller, Law Offices of Kevin B. Miller, San Antonio, for appellee.

Before RICKHOFF, HARDBERGER and DUNCAN, Justices.

HARDBERGER, Justice.

This is a case arising out of a car wreck, and a subsequent bad faith lawsuit against the insurance company. Both sides engaged in extensive legal maneuvering before the jury trial started. The insurance company first took a default judgment against its insured, Sanchez (the Defendant). Then the plaintiff entered into a settlement agreement with Sanchez, who owned the car, and Ocejo, who was driving the car. This agreed judgment was for $100,000 and included an agreement that recovery would only be sought against the insurance company, Viking. Sanchez and Ocejo then assigned over any rights they might have against the insurance company to the plaintiff Moctezuma. The insurance company responded by taking a second default judgment—this time against Ocejo. Then the plaintiff got a final judgment for $100,000 against Sanchez and Ocejo based on the earlier settlement agreement. A year passed, and finally the parties met in a contested hearing: a trial on the merits. Each was already armed with judgments against the other, claiming the matter had already been decided. The trial court put them to trial anyway, and Moctezuma, the plaintiff, won three out of four issues. Significantly, however, the jury failed to find bad faith on the part of the insurance company. The trial court entered a verdict for $100,000, plus another $40,000 in attorney's fees. None of the jury issues inquired about the actual damages suffered by Moctezuma.

This court is not impressed with the unilateral documents collected by both parties. We also do not believe that extracontractual damages may be awarded in the absence of a bad faith finding. We affirm and reform the verdict for the policy limits of $20,050, plus attorney fees of 40% of the amount recovered ($8,020).

### The Facts

Rosa Ocejo, driving a car owned by her step-father, Manuel Sanchez, rear-ended Lauro Moctezuma. There is conflicting evidence on the seriousness of the injuries received by Moctezuma. Sanchez had liability insurance with a $20,050 limit of liability for each person injured. The insurance company was Viking County Mutual Insurance Company a/k/a Commonwealth County Mutual Insurance Company (Viking). Viking decided that they might have a coverage defense because of conflicting statements made by Sanchez as to his giving the car to Ocejo. Viking got a legal opinion from an independent law firm which said that registration of the transferred title is not required to validly transfer ownership. With the matter still in dispute, Viking hired one lawyer, William Hubbard, to defend Sanchez and Ocejo. Viking then hired another lawyer, Charles King, to sue Sanchez and Ocejo for a declaratory judgment. Neither Sanchez, Ocejo or their Viking attorney, Hubbard showed up for this declaratory judgment hearing. Viking took a default judgment against both Sanchez and Ocejo. This document found, naturally enough, that Viking had no duty to defend the lawsuit.

Following these events, Moctezuma entered into an agreed judgment with Sanchez and Ocejo for $100,000. Moctezuma signed a covenant not to execute on the judgment, and Sanchez and Ocejo assigned any and all causes of action they had against Viking to

Moctezuma. Viking, of course, was not a part of this agreement, and was not present. Consequently, it too was self serving, but this time to the advantage of Moctezuma. Interestingly enough, Hubbard was there in his capacity as the defense lawyer for Sanchez and Ocejo (but being paid by Viking), and signed the settlement agreement.

When the case went to trial, the jury was only asked four questions, all of which they answered, and all of which we feel there was sufficient evidence to support their findings:

1. Sanchez had not given his car to Ocejo.

2. Viking had waived its right to deny liability coverage to Sanchez or Ocejo.

3. Viking did not knowingly commit an unfair act or practice that resulted in a monetary judgment against Sanchez and Ocejo.

4. A reasonable attorney's fee for the plaintiff's attorney is 40% of the recovery.

The trial court rendered judgment for $140,000 on the verdict: $100,000 plus a 40% attorney's fee.

### Viking's Default Judgment Against Sanchez and Ocejo

Viking filed a petition for declaratory judgment against Sanchez, Ocejo and Moctezuma in June, 1991 asking for a judicial declaration that it had no duty to defend and that there was no coverage. The relief sought was overly broad. At that point the court could only rule on the duty to defend, as will be explained later. No doubt realizing this, Viking then amended their petition, dropped the coverage request, and simply asked for a declaration on the duty to defend. Moctezuma answered the suit, and for a period of time Ocejo could not be served. Sanchez was served, and a default judgment was taken against him "for all relief requested in Plaintiff's Original Petition." But the original petition had been amended, and therefore the effect of the judgment was limited to the request asked for in the amended petition that was then before the court, i.e., a declaration on the duty to defend. Viking then severed this judgment, making it final. Viking finally got service on Ocejo and in Feb., 1992, got a default judgment against her "for

all relief requested in Plaintiff's petition." This order did not refer to which petition, but the only petition before the court was the amended petition seeking a declaration on the duty to defend. This judgment was also severed and made final.

■ The trial judge's ruling only encompassed what was asked for in the amended petition, namely a ruling on the duty to defend. The court did not, and could not, have ruled on the superseded request for a declaration on the coverage or indemnity question because it would have been nothing more than an advisory opinion. This has been prohibited in general, and in these specific fact patterns for several years.

In the Supreme Court case of *Firemen's Insurance Company of Newark, New Jersey v. Burch*, 442 S.W.2d 331 (Tex.1968), a trial court had ruled on both the duty to defend, as well as the coverage/indemnity question. The court was reversed.

> The question of the insurance company's duty to defend presented a justiciable issue ... However, that portion of the decree which attempts to declare the liability of the insurance company upon any judgment which may hereafter be rendered in the case of Burch v. Butler is purely advisory in nature and beyond the power and jurisdiction of the district court to render. Accordingly, such portion of the trial court's judgment is vacated.

*Id.* at 332–333.

Several Texas cases have followed *Burch. See Providence Lloyds v. Blevins*, 741 S.W.2d 604 (Tex.App.—Austin 1987); *Freeport Operators, Inc. v. Home Insurance Company*, 666 S.W.2d 566 (Tex.App.—Houston [14th Dist.] 1984); *Granite Construction Company, Inc. v. Bituminous Insurance Companies*, 832 S.W.2d 427 (Tex.App.—Amarillo 1992).

As Viking only got, and could have only gotten, a declaration on its duty to defend and then chose to take the safer path and defend the lawsuit anyway, the effect of these two default judgments in 1991 and 1992 on the issues presented on this jury verdict in 1993 is nil.

## Moctezuma's Final Judgment Against Sanchez and Ocejo

In February of 1992 Moctezuma entered into a settlement agreement with Sanchez and Ocejo for $100,000. It was also agreed that Sanchez and Ocejo assigned over any claims that they may have against Viking to Moctezuma. In consideration of the assignment, Moctezuma agreed to proceed only against Viking, and take no action to collect any monies from Sanchez or Ocejo. A final judgment based on this settlement agreement was entered between Moctezuma and Sanchez and Ocejo in April of 1992. Viking was not part of either the settlement agreement or the final judgment. Hubbard, the attorney hired by Viking to defend Sanchez and Ocejo, signed the settlement agreement in his capacity as the defense attorney for Sanchez and Ocejo.

■ Viking complains that the trial court erred in not giving it an opportunity to present evidence that the Agreed Judgment was unreasonable and the product of fraud or collusion. They also complain of the failure of the trial court to submit a jury question on this issue. Alternatively, Viking points out that they were a stranger to the final judgment and should not be liable for any extra-contractual damages unless such damages were caused by the insurer's wrongful conduct. We agree with this latter position. Viking is correct when they say that under the terms of the policy their only obligation is to defend Sanchez and Ocejo and to pay any judgment up to the $20,050 policy limits. Viking can only be responsible for damages beyond their contractual obligations if it is guilty of bad faith. The jury found Viking did not "commit an unfair act or practice that resulted in a monetary judgment against its insureds." There was conflicting evidence on this point, but we find there was sufficient evidence to support the jury's finding.

■ The general rule in Texas is that an insurer cannot collaterally attack a judgment involving its insured on the grounds of fraud, collusion, or unreasonable damages. *Employers Casualty co. v. Block*, 744 S.W.2d 940, 942–43 (Tex.1988); *Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). The underlying theory behind these cases is that an insurer who has the opportunity to defend its insured, but refuses, is not a stranger to any judgment entered into by its insured and, therefore, is bound by any judgment. *American Fidelity & Casualty Co. v. Williams*, 34 S.W.2d 396, 404 (Tex.Civ.App.—Amarillo 1930, writ ref'd). But Viking did not refuse to provide a defense. On the contrary, they provided a defense even though they had a default judgment that said they didn't have to.

*Whatley v. City of Dallas*, 758 S.W.2d 301, (Tex.App.—Dallas 1988, writ denied) is instructive. This was a lawsuit arising out of damages to Whatley caused by a police officer by his use of excessive force in making the arrest of Whatley. Whatley entered into an agreed judgment with the officer and also signed an agreement not to try to collect damages against the officer. The amount of agreed damages was more than the City's liability protection plan. Justice Hecht, then with the Dallas appeals court, wrote:

> The absence of a claim in this case that the City acted in bad faith in refusing to defend Del Gaudio (the officer) ... precludes Whatley from recovering on his wrongful refusal to defend claim damages in excess of the limits of the City's liability protection plan. This conclusion is supported both by case authority and by logic.

*Id.* at 307. In our case, as in *Whatley*, there was no bad faith. Therefore recoverable damages were limited to the policy. In another refusal to defend case, *Texas United Ins. v. Burt Ford Enterprises*, 703 S.W.2d 828 (Tex.App.—Tyler 1986, no writ), the court emphasized the insurance company can only be liable for their policy limits:

> ... the insurer is bound by the judgment for the damages adjudged thereby within policy limits, and for the expenses of the insured in defending the suit, including reasonable attorneys' fees and court costs.

*Id.* at 835.

In the instant case there were no expenses to the insured of defending the case as Viking provided the defense. This leaves only recoverable damages against Viking of the policy limits, attorney's fees and court costs.

Policy limits and court costs are known quantities, and the jury assessed the attorney's fees. "An insurer is not liable for extracontractual damages, however, unless the damages were proximately caused by the insurer's wrongful conduct." *Wheelways Ins. Co. v. Hodges,* 872 S.W.2d 776 (Tex.App.—Texarkana 1994). It is the Plaintiff's burden to establish liability for extracontractual damages, and as the Plaintiffs did not establish this, they are limited to the damages set forth in *Burt Ford,* above.

■ Moctezuma did establish that his injuries reasonably entitled him to the policy limits. His physician, Dr. Oscar Gutierrez, testified that Moctezuma suffered two bulging disks as a result of the accident. Another physician, Dr. Mary Sammuels, testified that Moctezuma's condition of osteoporosis would make him more susceptible to injury. His past medical bills at time of trial was $3,000 and there was testimony from his physicians that he would require continuing medical care the rest of his life. The jury found that Viking waived their right to deny liability coverage, and there is evidence to justify their answer.

### Conclusion

1. We agree with Viking's first point of error that the judgment in excess of the policy limits is not supported by a jury finding, and we reform the judgment to delete that portion of the verdict.

2. We agree with Viking's tenth point of error that requests the amount of attorney's fees be reduced from $40,000 to 40% of the policy limits or $8,020, and we reform the judgment accordingly.

3. All other of Viking's points of error are overruled.

DUNCAN, Justice, concurring and dissenting.

I agree with the majority's judgment insofar as it denies Moctezuma a recovery of extracontractual damages. The absence of a finding that Viking violated the Texas Insurance Code or its duty of good faith and fair dealing is fatal to this claim. I disagree,

however, with the majority's judgment awarding Moctezema the policy limits and attorney's fees. Moctezuma, as the assignee of Sanchez and Ocejo, is collaterally estopped from relitigating the fact that Sanchez gave Ocejo his car before the accident. This fact conclusively establishes that Moctezuma's suit against Sanchez and Ocejo was outside the coverage of Sanchez's policy. Since the jury's waiver finding cannot create coverage when none exists under the policy, Viking cannot be held liable on the policy. I therefore respectfully dissent.

"An insurer is required to defend *only* those cases within the policy coverage." *Fidelity & Guar. Ins. Underwriters v. McManus,* 633 S.W.2d 787, 788 (Tex.1982) (emphasis added). A duty to defend is therefore not owed if the plaintiff's petition only alleges facts excluded by the policy. *Granite Constr. Co. v. Bituminous Ins. Co.,* 832 S.W.2d 427, 429 (Tex.App.—Amarillo 1992, no writ) (citing *McManus,* 633 S.W.2d at 788). Therefore, while it is true that the trial court may not properly render a declaratory judgment on the insurer's duty to pay a judgment or settlement because it is an impermissible advisory opinion,[1] it is not true that a judgment establishing the absence of a duty to defend cannot also establish the absence of coverage. Indeed, as the supreme court recognized in *McManus,* it is because there is no coverage that there is no duty to defend.

Whether a duty to defend is owed is a justiciable issue that may be determined in a declaratory judgment action. *Burch,* 442 S.W.2d at 332–33. Viking, therefore, properly sought a declaratory judgment to determine whether it owed a duty to defend either Sanchez or Ocejo. In its petition, Viking alleged that it did not owe a duty to defend Sanchez because he did not own and was not driving the car at the time of the accident; rather, Sanchez had given the car to Ocejo before the accident. Viking also alleged that it did not owe a duty to defend Ocejo, both because he was not Viking's insured and because Ocejo was the owner of the car at the time of the accident and therefore could

---

1. *Firemen's Ins. Co. of Newark, New Jersey v.* *Burch,* 442 S.W.2d 331, 332 (Tex.1968).

not have been a "permissive user" of Sanchez's car. If proved or deemed true, these factual assertions would conclusively establish not only that Viking owed neither Sanchez nor Ocejo a duty to defend, but also—necessarily—that Sanchez's policy did not cover the accident.

Indisputably, these factual allegations were deemed admitted and therefore true when the default declaratory judgments were rendered. *E.g., Holt Atherton Indus. v. Heine,* 835 S.W.2d 80 (Tex.1992); *Sunrizon Homes v. Fuller,* 747 S.W.2d 530 (Tex.App.—San Antonio 1988, writ denied). Just as clearly they were not proved true, since there was no trial in the declaratory judgment action. The dispositive issue before this court, therefore, is whether to give collateral estoppel effect to a judgment that rests upon factual allegations that are deemed true as a result of a default judgment. Counsel has not cited,[2] and I have been unable to find, a case deciding this issue in the duty to defend context. However, this court has previously decided the issue in a somewhat different context in *Mendez v. Haynes Brinkley & Co.,* 705 S.W.2d 242 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.).

In *Mendez,* the Mendezes filed suit against Zuniga, an insurance recording agent, as well as the two insurers he purported to represent, Underwriters at Lloyds and American Security. The Mendezes alleged that Zuniga had *falsely* represented to them that he was an agent with authority to bind Haynes Brinkley, an authorized agent for Underwriters and American Security. The Mendezes further alleged that Zuniga *falsely* represented that he had obtained insurance covering an apartment house the Mendezes owned. Finally, the Mendezes alleged that their apartment house was heavily damaged by fire and ordered razed by the city, but Haynes Brinkley had denied coverage indi-vidually and as general agent for Underwriters and American Security.

Zuniga failed to answer, and the Mendezes took a default judgment against him and non-suited Haynes Brinkley. The Mendezes then sued Haynes Brinkley, Underwriters, and American Security for breach of alleged insurance contracts. The defendants were granted a summary judgment on the ground that the factual allegations deemed true by virtue of, and actually incorporated in, the default judgment against Zuniga conclusively established that the Mendezes could not recover against any defendant for breach of contract.

The issue before this court in *Zuniga,* therefore, was whether the factual allegations deemed true by virtue of the default judgment would be given collateral estoppel effect in the Mendezes' subsequent suit against the insurers. This court affirmed, holding that the insurers "produced sufficient summary judgment evidence sustaining their affirmative defense of collateral estoppel." *Mendez,* 705 S.W.2d at 245–46.

*Mendez* was decided in 1986. Two years later the supreme court appeared to give it tacit approval by phrasing the collateral estoppel test as whether "the party against whom collateral estoppel is asserted had a full and fair *opportunity* to litigate the issue in the prior suit." *Tarter v. Metropolitan Sav. & L. Ass'n,* 744 S.W.2d 926, 927 (Tex. 1988) (emphasis added). Under this formulation of the test, collateral estoppel effect should be given to a default judgment rendered after proper service, since the defaulting party had a full and fair opportunity to litigate all issues involved in the suit.

More recently, however, the supreme court has stated that "[a] prior adjudication of an issue will be given estoppel effect only if it was adequately deliberated and firm. The

2. Counsel has referred us to *Greater Houston Transp. Co. v. Wilson,* 725 S.W.2d 427 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), in which the court held that, based upon a prior default judgment, the trial judge properly instructed the jury that the cab driver for whom the appellant cab company had worked had already been found negligent and that his negligence was a proximate cause of the accident. *Id.* at 429–30. However, the appellant in *Wilson* apparently did not raise, and the court did not decide, whether the default judgment should have been accorded collateral estoppel effect; the court merely held that instructing the jury as to the driver's negligence was not error. *Id.* at 429 (citing *Eagle Trucking Co. v. Texas Bitulithic Co.,* 612 S.W.2d 503, 507 (Tex.1981)).

factors to be considered in making this determination are (1) whether the parties were fully heard, (2) that the court supported its decision with a reasoned opinion, and (3) that the decision was subject to appeal or was in fact reviewed on appeal." *Mower v. Boyer,* 811 S.W.2d 560, 562–63 (Tex.1991) (denying collateral estoppel effect to a partial interlocutory summary judgment because factual "issue was not expressly raised or decided, the decision was not supported by a reasoned opinion, and the judgment was not reviewable by appeal). Under this test, a default judgment may or may not be accorded collateral estoppel effect; the proper resolution of the issue would appear to depend upon how these factors are to be weighed.

In my view, the same policy reasons that support giving a default judgment legal effect in the action in which the default is taken also support giving collateral estoppel effect to a default judgment in a subsequent action between the parties or their privies. The non-answering or non-appearing party had a full and fair opportunity to litigate and did not do so. If the legal right to take a default judgment is to have any meaning at all, then a default judgment must be given legal effect to the extent—but only to the extent—of the factual allegations (other than damages) contained in the petition. Moreover, the defaulting party has vehicles for setting aside the default judgment.[3] On this basis alone, *Mower* is distinguishable.

Why should a default judgment have legal effect in one case and not the other? Either it is legally effective or it is not. And what is the effect of denying collateral estoppel effect to a default declaratory judgment on the duty to defend, as the majority has done in this case?[4] We effectively invalidate the insurer's ability to obtain a binding determination of its duty to defend. The import of determining a duty to defend in a declaratory judgment action will depend solely upon whether the insured chooses to appear. Any insured would be well-advised to simply not appear and thus deprive the declaratory judgment of any real meaning. That is the result of the majority opinion in this case.

Finally, the situation the majority creates is simply fundamentally unfair. The insurer who refuses to defend cannot collaterally attack the insured's agreed judgment,[5] but the insured can collaterally attack the insurer's declaratory judgment establishing that it has no duty to defend because there is no coverage.

For these reasons, I believe the default declaratory judgments in this case should be given collateral estoppel effect. Accordingly, for purposes of this suit, the following facts were conclusively established and not subject to being relitigated by Sanchez and Ocejo or their assignee, Moctezuma:[6]

- Sanchez gave the car to Ocejo before the accident;
- Ocejo was the owner of the car at the time of the accident; and
- Ocejo was not Viking's insured.

Accordingly, the jury should not have been asked whether Sanchez gave the car to Ocejo before the accident. *See Block,* 744 S.W.2d at 944 (only disputed issues of fact should be submitted to jury). Since the question was erroneously submitted, and the jury made a finding contrary to the conclusively-established fact, the jury's answer is immaterial and should be disregarded. *C & R Transport v. Campbell,* 406 S.W.2d 191 (Tex.1966).

The jury's answer to Question 2 is likewise immaterial, because waiver does not establish coverage when none exists under the policy. *E.g., Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 603 (Tex.1988). Neither of the jury's answers to these questions establishes coverage. The jury's remaining an-

---

**3.** *See, e.g., Craddock v. Sunshine Bus Lines* 134 Tex. 388, 133 S.W.2d 124 (1939) (motion for new trial); Tex.R.App.P. 45 (writ of error).

**4.** In fact, the majority opinion does not rest upon the fact that the declaratory judgment in this case was taken by default. Rather, the majority's reasoning would deny collateral estoppel effect to any declaratory judgment establishing the ab-

sence of a duty to defend—even if that judgment rested upon explicit jury findings.

**5.** *E.g., Employers Cas. Co. v. Block,* 744 S.W.2d 940, 942–43 (Tex.1988).

**6.** *See, e.g., Nash v. Carolina Cas. Ins. Co.,* 741 S.W.2d 598, 602 (Tex.App.—Dallas 1987, writ denied) (assignee barred if assignor barred).

swers likewise do not establish an extracontractual basis for a judgment against Viking. Accordingly, the trial court's judgment should be reversed and judgment rendered in favor of Viking. *See* Tex.R.App.P. 81(c). I therefore dissent.